[No. S058197. Dec. 1, 1997.]

THE PEOPLE, Plaintiff and Respondent, v.
CADELIA LOUISE HOWARD, Defendant and Appellant.

**COUNSEL**

Robert T. Kawamoto, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General,

Stan M. Helfman and Sharon G. Birenbaum, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

CHIN, J.—When the trial court in a criminal case decides at time of sentencing to grant the defendant probation, the court may either suspend imposition of sentence or actually impose sentence but suspend its execution. (See Pen. Code, § 1203.1, subd. (a).)[1] If the court has suspended imposition of sentence and later revokes the defendant's probation, then the court has undisputed authority to choose from all the initially available sentencing options. (§ 1203.2, subd. (c).) If instead the court actually imposes sentence but suspends its execution on granting probation, and the sentence becomes final and nonappealable, does the court retain similar authority to impose a new sentence different from the one previously imposed?

In this case, we resolve a conflict among Court of Appeal decisions regarding a trial court's authority, on revoking probation, to reduce a probationer's previously imposed but suspended sentence. We conclude that if the trial court has suspended *imposition* of sentence, it ultimately may select any available sentencing option. However, if, as here, the court actually imposes sentence but suspends its *execution*, and the defendant does not challenge the sentence on appeal, but instead commences a probation period reflecting acceptance of that sentence, then the court lacks the power, at the precommitment stage (see § 1170, subd. (d)), to reduce the imposed sentence once it revokes probation.

## I. FACTS

The following facts are taken largely from the Court of Appeal opinion. Cadelia Louise Howard (defendant) appeals from the San Francisco Superior Court's order revoking her probation and ordering execution of a four-year prison sentence. The court imposed that sentence on October 25, 1994, but suspended its execution after defendant pleaded guilty to one count of transportation of cocaine base (Health & Saf. Code, § 11352, subd. (a)). (The record is unclear whether the parties agreed to the four-year sentence as part of a plea bargain resulting in the dismissal of the remaining counts. It is undisputed, however, that defendant did not challenge the four-year sentence on appeal after the court originally imposed it. Following imposition of sentence, defendant appealed from the denial of her motion to withdraw her guilty plea, but she did not question the validity of her sentence on appeal.)

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Defendant contends she is entitled to a remand for resentencing because the trial court improperly failed to exercise its discretion to impose a mitigated sentence of three years, based on evidence that she had reliably reported to her probation officer, had tested negative for drug use, had maintained steady employment, and had complied with her other probation conditions.

At defendant's probation revocation hearing in June and July 1995, the parties adduced the following evidence: During the evening of April 14, 1995, San Francisco Police Officers John Monroe and Paul Lozada were on duty in the narcotics division. They received a telephone call from an anonymous informant, stating that defendant was selling drugs from 2026 Lane Street in San Francisco. Monroe determined that defendant lived at that address and that she was on probation with a condition permitting a warrantless search of her person and residence. The officers then went to the Lane Street address, confronted defendant standing outside, and announced that they were going to execute a probation search. Defendant immediately turned and went into her apartment, walking toward the rear of the apartment with her back to the officers. Lozada saw defendant reach into her pants and make a motion with her hand extended in the direction of a chair. When she turned around, Lozada told Monroe that defendant had thrown a bag of white powder on a chair. Monroe saw the bag and seized it. The parties stipulated the bag contained .26 grams of cocaine. Lozada arrested on drug possession charges two other people present at the Lane Street address that night: a woman who claimed to be Dolores Shaw (but was actually Cheryl Brooks), and Jerome Gray. Gray had cocaine in his pocket, and Brooks had cocaine in a brown coin purse in her pocket. Neither Brooks nor Gray was near the chair on which the officers found the bag of cocaine.

In her defense, defendant denied possessing or throwing any drugs. She claimed that she was unaware anyone else at the Lane Street residence had any drugs, and she denied that the apartment was rented in her name.

Paul Bryant claimed he was at the Lane Street address on the night of April 14, 1995, and was playing pool when "four or five" police officers arrived. Bryant denied seeing anything in defendant's hands and said he did not see her throw anything away.

Eric Murphy, who owned the beauty shop at 5273 Third Street that adjoined defendant's premises, testified that he, too, was playing pool with defendant when the police arrived. Murphy said defendant was holding a pool cue, and nothing else, in her hands when the police came in and handcuffed her.

The real Dolores Shaw testified that she was watching people play pool that night, but went to the beauty shop when she heard the police coming. She claimed that a "tall guy" (who she believed was Jerome Gray) tossed something and then went out the back door to the beauty shop. Shaw said the only thing defendant had in her hands was a pool cue.

Defendant called two other witnesses, Stephano Martinez and Marian Sullivan, who testified about her employment. Martinez said that he had employed defendant in his janitorial service since the end of February 1995 and that she was a good worker. Sullivan said he had owned a business called Sullivan's Video Games and had employed defendant there for approximately one year as a collector and repair trainee. Sullivan, too, said defendant was a good and honest employee with whom he had "no problems . . . whatsoever."

After the April 14, 1995, incident, Senior Probation Officer Tuan Dam prepared a supplemental probation report recommending defendant be continued on probation because she had complied with the terms and conditions previously imposed. Defendant's supervising probation officer, William Rhue, confirmed that defendant had tested negative for drug use and reported to him monthly as required. These witnesses admitted, however, that defendant would be in violation of her probation if she were found in possession of cocaine. Rhue also testified that defendant reported having a job but, when asked to provide pay stubs to verify her employment, failed to provide him with the requisite proof.

At the conclusion of the hearing, the court found that defendant had violated the terms of her probation, in that "a significant amount" of cocaine was found in her possession at the time of her arrest. The court then ordered into execution the sentence of four years in state prison, adding only that "further probation is not appropriate in this case."

## II. DISCUSSION

■■■ Defendant does not contend the evidence is insufficient to support the trial court's findings that she violated both the express and implied terms of her probation by being in possession of cocaine on the evening of April 14, 1995, and that further probation was not appropriate. Her only contentions on appeal are: (1) on revoking her probation, the trial court had discretionary authority to reduce her previously imposed, but suspended, four-year prison sentence to the mitigated term of three years (Health & Saf. Code, § 11352, subd. (a)); and (2) the court abused its discretion by failing to consider the mitigating factors she presented at the probation revocation

hearing. Our rejection of defendant's initial contention disposes of her appeal.

The proper disposition of this case rests upon the important distinction, in probation cases, between orders suspending imposition of sentence and orders suspending execution of previously imposed sentences. We must also consider whether our decision in *People* v. *Karaman* (1992) 4 Cal.4th 335 [14 Cal.Rptr.2d 801, 842 P.2d 100] (*Karaman*) has blurred that distinction and expanded trial courts' sentencing authority in probation revocation cases involving suspended execution sentencing orders.

■ If the trial court in 1994 had originally suspended *imposition* of sentence before placing defendant on probation, the court unquestionably would have had full sentencing discretion on revoking probation. When the trial court suspends imposition of sentence, no judgment is then pending against the probationer, who is subject only to the terms and conditions of the probation. (*People* v. *Banks* (1959) 53 Cal.2d 370, 386 [1 Cal.Rptr. 669, 348 P.2d 102]; *Stephens* v. *Toomey* (1959) 51 Cal.2d 864, 871 [338 P.2d 182].) The probation order is considered to be a final judgment only for the "limited purpose of taking an appeal therefrom." (*People* v. *Superior Court* (*Giron*) (1974) 11 Cal.3d 793, 796 [114 Cal.Rptr. 596, 523 P.2d 636].) On the defendant's rearrest and revocation of her probation, ". . . the court may, if the sentence has been suspended, pronounce judgment for any time within the longest period for which the person might have been sentenced." (§ 1203.2, subd. (c); see also Cal. Rules of Court, rule 435(b)(1) ["If the imposition of sentence was previously suspended, the judge shall impose judgment and sentence" in accordance with circumstances existing at time probation was granted and other proper sentencing considerations].[2])

■ Here, however, after defendant pleaded guilty to one count of transportation of cocaine base, the court actually sentenced her to a four-year prison term, but suspended *execution* of that sentence during the probationary period. Unlike the situation in which sentencing itself has been deferred, where a sentence has actually been imposed but its execution suspended, "The revocation of the suspension of execution of the judgment brings the former judgment into full force and effect . . . ." (*Stephens* v. *Toomey*, *supra*, 51 Cal.2d at p. 874; see also *People* v. *Banks*, *supra*, 53 Cal.2d at pp. 384-385; but compare § 1170, subd. (d) [once defendant has been sentenced and committed to Department of Corrections custody, court may within 120 days of commitment recall sentence and resentence defendant to a new term no greater than that imposed by initial sentence].)

Reflecting these principles, section 1203.2, subdivision (c), recites that following the defendant's rearrest, and on revocation and termination of

---

[2]All further references to rules are to the California Rules of Court.

probation, "if the judgment has been pronounced and the execution thereof has been suspended, the court may revoke the suspension and order that *the judgment shall be in full force and effect.*" (Italics added; see also rule 435(b)(2) ["If the execution of sentence was previously suspended, the judge shall order that the judgment previously pronounced be in full force and effect and that the defendant be committed to the custody of the Director of Corrections for the term prescribed in that judgment."].)

Therefore, section 1203.2, subdivision (c), and rule 435(b)(2), by their terms, limit the court's power in situations in which the court chose to impose sentence but suspended its execution pending a term of probation. On revocation of probation, if the court previously had imposed sentence, the sentencing judge must order that exact sentence into effect (*People* v. *Chagolla* (1984) 151 Cal.App.3d 1045, 1050-1051 [199 Cal.Rptr. 181] (*Chagolla*); accord, *People* v. *Colado* (1995) 32 Cal.App.4th 260, 262-264 [38 Cal.Rptr.2d 57] (*Colado*)), subject to its possible recall under section 1170, subdivision (d), *after* defendant has been committed to custody.

### A. *Chagolla*

In *Chagolla,* the Court of Appeal decided the precise issue raised in this case. There, the defendant received probation for an attempted murder charge. The trial court imposed a four-year sentence with a three-year enhancement for infliction of great bodily injury, but it suspended execution of the sentence during the probation. (*Chagolla, supra,* 151 Cal.App.3d at p. 1047.) The defendant did not appeal the sentence and later was arrested for other offenses. The trial court revoked the defendant's probation and ordered the previously suspended sentence into effect. (*Ibid.*) However, the trial court also purported to stay the enhancement, reducing the defendant's prison term to four years. (*Id.* at pp. 1047-1048.) The Court of Appeal held that, under the sentencing rules, and particularly rule 435(b)(2), the trial court had no authority to modify the previously imposed sentence. (*Chagolla, supra,* 151 Cal.App.3d at pp. 1049-1050.)

### B. *Karaman*

In *Karaman,* we acknowledged a narrow exception to the general rule depriving the court of authority to modify a sentence once it has been imposed and entered in the clerk's minutes. (*Karaman, supra,* 4 Cal.4th at p. 352.) We must now decide whether the *Karaman* exception is broad enough to apply to probation revocation cases, thereby essentially eliminating the primary distinction between suspended imposition and suspended execution sentencing.

In *Karaman*, the defendant pleaded guilty to robbery and admitted the accompanying allegation of personal firearm use. (*Karaman, supra*, 4 Cal.4th at p. 340.) The probation officer assigned to the defendant's case indicated that he was ineligible for probation because the robbery involved firearm use. (*Id.* at p. 341; see also § 1203.06, subd. (a)(1)(B).) The trial court sentenced the defendant to the lower term of two years for the robbery charge, plus a two-year enhancement for personal firearm use. (*Karaman, supra*, 4 Cal.4th at p. 341.) The court contemporaneously ordered execution of the sentence stayed for one week to allow the defendant to take care of personal matters. (*Ibid.*) The court clerk formally entered the sentence and the one-week stay order in the court minutes. (*Ibid.*)

After the brief stay expired, the trial court held another hearing on its own motion. (*Karaman, supra*, 4 Cal.4th at pp. 341-342.) The court struck the enhancement for personal firearm use, modifying the defendant's sentence to a two-year term for robbery. (*Id.* at p. 342.) The district attorney appealed, arguing that the court lacked jurisdiction to modify the defendant's sentence once the clerk had entered the judgment into the court minutes. (*Id.* at pp. 342-343.) We disagreed.

We noted that generally a trial court lacks jurisdiction to resentence a criminal defendant after execution of sentence has begun. (*Karaman, supra*, 4 Cal.4th at p. 344.) We also acknowledged that a judgment for imprisonment ordinarily is deemed executed when a certified copy of the minute order or abstract of judgment is "furnished to the officer whose duty it is to execute the probationary order or judgment . . . ." (§ 1213; see *Karaman, supra*, 4 Cal.4th at pp. 344-345; *In re Black* (1967) 66 Cal.2d 881, 890 [59 Cal.Rptr. 429, 428 P.2d 293].) We explained that courts have no jurisdiction to *increase* a sentence after its formal entry into the court minutes. (*Karaman, supra*, 4 Cal.4th at p. 350; see also *People* v. *McAllister* (1940) 15 Cal.2d 519, 526-527 [102 P.2d 1072].)

We found no authority, however, forbidding a court from *reducing* a sentence previously imposed but temporarily stayed, if the sentence had not yet been executed by delivery of a commitment order. (*Karaman, supra*, 4 Cal.4th at p. 350.) We observed that a statute vests the sentencing court with similar, *postcommitment* authority, "within 120 days of the date of commitment on its own motion . . . [to] recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if he or she had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence." (§ 1170, subd. (d).) We recognized that this section is an exception to the common law rule that the court loses resentencing jurisdiction when execution of sentence begins. (*Karaman,*

*supra*, 4 Cal.4th at pp. 351-352; see *Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 455-456 [279 Cal.Rptr. 834, 807 P.2d 1063].) But we also noted that, "As a practical matter, to require a trial judge (who desires to resentence a defendant whose sentence has been stayed) to delay resentencing until the actual commencement of the defendant's prison term generally would entail a considerable waste of time and expense." (*Karaman, supra,* 4 Cal.4th at p. 352.)

Our opinion concluded, "where the sentence is to a term of imprisonment, the trial court retains jurisdiction, during the period a stay is in effect and at any time prior to execution of the sentence, to reconsider the sentence and vacate it or impose any new sentence which is not greater than the initial sentence, just as it may do so on its own motion pursuant to section 1170, subdivision (d), within 120 days after the court has committed the defendant to the prison authorities." (*Karaman, supra,* 4 Cal.4th at p. 352.)

Thus, we held in *Karaman* that, although the trial court imposed a sentence, which was entered into the court's minutes, the court did not lose jurisdiction to modify the defendant's prison term during the brief period when it stayed execution of the sentence at his request. Unlike the situation in *Karaman,* here we are concerned with the court's power to modify an imposed sentence, long ago final in terms of appealability, execution of which the court had suspended during a probationary period. Did *Karaman* change the sentencing ground rules in probation revocation cases? The Court of Appeal decisions considering this question are in conflict.

## C. *Colado*

*Colado* concluded that *Karaman* did not change the sentencing rules in probation revocation cases. In *Colado,* the defendant was convicted of a drug offense while on probation for two other drug-related convictions. (*Colado, supra,* 32 Cal.App.4th at pp. 261-262.) The trial court had sentenced him to nine years in prison after one of his previous convictions, but it suspended execution of sentence. (*Id.* at p. 262.) After his third conviction, the trial court revoked his probation and ordered the previously suspended sentence to run concurrently with the sentence for his latest conviction. (*Ibid.*) The trial court noted that it would have ordered a shorter sentence, but felt compelled to impose the nine-year sentence previously imposed and suspended. (*Ibid.*) The defendant appealed, arguing that the trial court could have modified the sentence downward at any time before execution of sentence because *Karaman* "permits a judge revoking probation to impose a new and lesser sentence than originally imposed." (*Ibid.*)

The Court of Appeal disagreed and affirmed the defendant's sentence, concluding that *Karaman* did not apply to a probation revocation. "*Karaman*

had nothing to do with a grant of probation and a later revocation, but rather with the mechanics of a short stay of execution of an imposed commitment to state prison, and the time at which jurisdiction to modify such an imposed sentence is lost." (*Colado, supra,* 32 Cal.App.4th at p. 263.) The *Colado* court observed that the sentence initially imposed in the case had become "final," both because the defendant had not appealed the original judgment that imposed the sentence, and because the trial court's jurisdiction to modify the sentence had also expired once the clerk entered the judgment in the court's minute book. (*Ibid.*)

### D.  *Howard: Court of Appeal Decision*

In the present case, the Court of Appeal disagreed with *Colado, supra,* 32 Cal.App.4th 260, and concluded that the trial court had discretion to reduce sentence in a suspended-execution probation-revocation situation. The court acknowledged that rule 435(b)(2) appears to require the trial court, on revoking probation, to impose the exact sentence previously imposed. But the court deemed that rule inconsistent with *Karaman*'s conclusion that the trial court's jurisdiction continues after sentence is pronounced and entered in the court minutes, until the time the court issues and delivers a commitment document to prison authorities.

The Court of Appeal also relied on *Karaman*'s holding (see *Karaman, supra,* 4 Cal.4th at p. 352) that strict application of the "minute-entry rule" would be inconsistent with the court's authority under section 1170, subdivision (d), to recall a sentence within 120 days of its execution. The court below assumed that "The 'practical' considerations underlying the *Karaman* holding are also present in every case in which it is finally determined that the defendant will actually be delivered to prison authorities to begin serving sentence but, for some 'reason rationally related to lawful sentencing' (*Dix v. Superior Court, supra,* 53 Cal.3d at p. 456), the trial court desires to reduce the punishment of a defendant whose sentence has been previously imposed. In such cases, it would be absurd to require the court to delay resentencing until the actual commencement of the defendant's prison term, with the concomitant waste of time and expense. (*Karaman, supra,* 4 Cal.4th at p. 352.) The better rule—as stated in *Karaman*—is that the trial court has the power 'at any time prior to execution' to impose a new, lesser sentence within the range of lawful punishment authorized by statute for the offense of which the defendant was convicted. (*Ibid.*)"

The Court of Appeal acknowledged that *Karaman* was not a probation revocation case, but the court assumed that we intended to apply our holding to those cases. The court also recognized that *Karaman* was dealing with

a sentence that was only briefly stayed and was not yet final on appeal. In the Court of Appeal's view, however, *Karaman* controlled the present case despite the substantial passage of time following imposition of sentence because the trial court had continuing jurisdiction over defendant probationer in "matters of sentencing." The court relied in part on section 1203.3, subdivision (a), a provision giving the trial court authority to modify or change the order suspending imposition or execution of sentence.

### E. *Analysis*

Contrary to the Court of Appeal, we believe *Karaman's* narrow holding should not extend to probation revocation situations. In *Karaman*, we described the issue then before us as "whether a trial court loses jurisdiction over a defendant, and the power to modify the defendant's sentence in a manner more favorable to the defendant, where the court has imposed a state prison sentence, has ordered a *brief stay of execution of judgment in order to permit the defendant to put his or her personal affairs in order prior to commencement of execution of the sentence*, and the clerk of the court has entered that sentence in the minutes of the court." (*Karaman, supra*, 4 Cal.4th at pp. 338-339, italics added.) The broad language of our *Karaman* holding must be read in light of its narrow factual context. As *Colado* observed, *Karaman* did not involve the suspension of execution of sentence during a grant of probation, a matter governed by statute and court rule. (*Colado, supra*, 32 Cal.App.4th at p. 263.)

■ Grant of probation is, of course, qualitatively different from such traditional forms of punishment as fines or imprisonment. Probation is neither "punishment" (see § 15) nor a criminal "judgment" (see § 1445). Instead, courts deem probation an act of clemency in lieu of punishment (cf. *In re Tyrell J.* (1994) 8 Cal.4th 68, 81 [8 Cal.4th 727a, 32 Cal.Rptr.2d 33, 876 P.2d 519]), and its primary purpose is rehabilitative in nature (see *People v. Cookson* (1991) 54 Cal.3d 1091, 1097 [2 Cal.Rptr.2d 176, 820 P.2d 278]).

■ Unlike the situation in *Karaman*, to which common law rules applied regarding retention of sentencing jurisdiction over the defendant, the authority to grant probation and to suspend imposition or execution of sentence is wholly statutory. (§ 1203, subd. (a); see *In re Oxidean* (1961) 195 Cal.App.2d 814, 817 [16 Cal.Rptr. 193].) During the probationary period, the court retains jurisdiction over the defendant (see *Karaman, supra*, 4 Cal.4th at p. 345; § 1203.2a), and at any time during that period the court may, subject to statutory restrictions, modify the order suspending imposition or execution of sentence (§ 1203.3). Therefore, unlike *Karaman*, the

court had authority to reduce a previously imposed but suspended sentence at any time prior to defendant's rearrest.

Our main purpose in *Karaman* was to address a situation that no statute directly controlled, namely, the court's authority to reduce an imposed sentence despite entry of the judgment into the court minutes, in a case where the court had briefly stayed execution of sentence to accommodate the defendant. In the present case, unlike *Karaman,* the court imposed sentence and suspended its execution in contemplation of a long period of probation that reflected defendant's acceptance of the sentence. (As previously noted, defendant did not challenge the validity of her sentence on appeal.) *Karaman*'s language, creating a common law exception to the minute-entry rule, did not change the long-standing *statutory* rule that, when a court revokes probation, canceling the suspension of a previously imposed sentence necessarily puts that sentence into "full force and effect." (§ 1203.2, subd. (c).)

Contrary to the Court of Appeal below, we see no irreconcilable conflict between rule 435(b)(2) and section 1170, subdivision (d). The latter provision allows a recall of sentence *at the postcommitment stage* and constitutes "an exception to the common law rule that the court loses resentencing jurisdiction once execution of sentence has begun. [Citations.]" (*Dix* v. *Superior Court, supra,* 53 Cal.3d at p. 455; see *Karaman, supra,* 4 Cal.4th at p. 352.) Rule 435(b)(2) is concerned with *precommitment* sentencing procedure and therefore is entirely consistent with section 1170, subdivision (d). As the Advisory Committee Comment to the rule states, "A judge imposing a prison sentence upon revocation of probation will have the power granted by section 1170(d) to recall the commitment on his or her own motion within 120 days after the date of commitment . . . ." (Advisory Com. com., 23 pt. 2 West's Ann. Ct. Rules (1996 ed.) foll. rule 435, p. 66.)

In *Karaman,* we observed that, although section 1170, subdivision (d), did not literally apply to the defendant's case, "practical" considerations justified permitting the sentencing court similar authority at the precommitment stage. (*Karaman, supra,* 4 Cal.4th at p. 352.) We observed that *"The Legislature,* although limiting the resentencing provisions of section 1170, subdivision (d), to the postcommitment situation, *has not otherwise imposed any such requirement,* and we likewise decline to do so." (*Ibid.,* italics added.) In the probation revocation area, however, the Legislature has "otherwise" indicated by providing that, if probation is revoked, "the [previous] judgment shall be in full force and effect." (§ 1203.2, subd. (c).)

Defendant argues that the same "waste of time and expense" rationale adopted in *Karaman* could be applied to the present situation—why should

the sentencing court be required to wait until actual commitment before it exercises its resentencing option under section 1170, subdivision (d)? The obvious answer is that the Legislature has directed that in probation revocation situations any reduction of sentence must occur at the *postcommitment* stage.

The Penal Code preserves the distinction between suspended imposition and suspended execution types of probation. (See §§ 1203, subd. (a), 1203.1, subd. (a), 1203.2, subd. (c) [each section acknowledges difference between these two types of probation].) Rule 435(b), announcing the sentencing rules that apply following probation termination, likewise explicitly sets out two different sentencing rules for these distinct situations. Applying *Karaman* in the context of this case would improperly undermine the distinction that statute and rule make between suspended imposition and suspended execution probation.

As previously observed, the Court of Appeal below relied in part on section 1203.3, subdivision (a), giving the trial courts authority to modify or change orders suspending imposition or execution of sentence. Defendant has furnished various legislative materials, of which we take judicial notice, regarding the probable intent underlying the enactment of this provision, but we find them largely inconclusive. In any event, although this section may in some situations allow a reduction of sentence previously imposed and suspended during probation, we note the provision by its terms does not apply to probation revocations *following rearrests*, which section 1203.2, subdivision (c), covers. (See § 1203. 3, subd. (e).) We conclude that section 1203.3 is inapposite here.

■ Defendant perceives a conflict between section 1203.2, subdivision (c), and rule 435(b). She focuses on the statute's language stating that the court, in suspended execution cases, "*may* revoke the suspension and order that the judgment shall be in full force and effect." (Italics added.) She argues that the statute, unlike rule 435(b), allows the court discretion whether or not to reduce sentence in these cases. We think defendant misreads the statute. In our view, section 1203.2, subdivision (c), merely gives the court discretion, on revocation and termination of probation, either (1) to revoke the *suspension of sentence* and commit the probationer to prison for the term prescribed in the suspended sentence, or (2) to decline to revoke the suspension or to order confinement. If the court does order a prison commitment, however, both section 1203.2, subdivision (c), and rule 435(b)(2) consistently set forth the rule that the previously suspended judgment shall "be in full force and effect."

Therefore, we conclude that, if the court has actually imposed sentence, and the defendant has begun a probation term representing acceptance of that sentence, then the court has no authority, on revoking probation, to impose a lesser sentence at the precommitment stage. Here, although defendant appealed the denial of her motion to set aside her guilty plea, she did not contest the validity of the sentence the court imposed when granting probation. No good reason exists for allowing her to do so once the court revoked her probation.

### III. CONCLUSION

We did not intend our *Karaman* decision to change the sentencing ground rules previously established in probation revocation cases. Indeed, to the extent these rules are based on statutory (§ 1203.2, subd. (c)) and administrative (rule 435(b)) underpinnings, we lack authority to change them, at least in the absence of constitutional considerations not present here. We conclude we should limit *Karaman* to nonprobation situations comparable to the one involved in that case, allowing the trial court to reconsider and reduce a previously imposed but briefly stayed sentence not imposed as part of a grant of probation. Of course, sentencing courts will retain their statutory authority under section 1170, subdivision (d), either sua sponte or on motion of the Department of Corrections, to recall a sentence and to resentence the defendant to an equal or lesser term, but that resentencing cannot occur at the time probation is revoked.

The judgment of the Court of Appeal is reversed.

George, C. J., Mosk, J., Baxter, J., Werdegar, J., and Brown, J., concurred.

**MOSK, J.,** Concurring.—The majority opinion accurately interprets existing statutes on the subject of sentencing and resentencing. Thus I fully concur.

However, I do have reservations on the strict limitation imposed on trial courts in the sentencing area. Sentences are imposed at the conclusion of trial proceedings or acceptance of a guilty plea. It is not inconceivable that the trial court, upon later reflection and in what it may subsequently deem to be the interests of justice, prefers a somewhat different sentence.

My confidence in the sentencing ability of trial courts suggests that their discretion should not be rigidly impaired by what appears to be a rather technical statutory limitation based entirely on the original sentence pronounced.

I mention this only to indicate a hope that the Legislature may consider expanding the statutory sentencing function of trial courts in this area.

KENNARD, J., Concurring and Dissenting.—I join the majority in its result—reversing the Court of Appeal's judgment—but not in its reasoning.

At issue here is the authority of a superior court, after revocation of a criminal defendant's probation, to reduce a sentence that was previously imposed on the defendant but the execution of which was suspended for the purpose of granting probation (hereafter an execution-suspended sentence). The exact issue is not whether superior courts possess authority to reduce an execution-suspended sentence in this situation—the majority concedes that they do. Rather, the issue is *when* the courts may exercise this authority. The majority holds that a superior court may not reduce an execution-suspended sentence "at the time probation is revoked" (maj. opn., *ante*, at p. 1095) but may do so only "at the *postcommitment* stage" (*id.* at p. 1094, original italics.)

To the extent this means that probation revocation and sentence reduction may not occur at the same hearing, or that one or more days must elapse between the two, I disagree. If the court decides at the time of probation revocation that the execution-suspended sentence should be reduced, nothing in the relevant statutory scheme or in the previous decisions of this court requires the waste of time and the added expense that necessarily results from delay in the implementation of that decision.

Nonetheless, I agree with the majority that the Court of Appeal erred in reversing the superior court's judgment in this case. Because superior courts are required to give reasons for sentence choices when they impose sentence, and because the Legislature has not given criminal defendants standing to move for sentence reduction, a superior court need not give reasons for declining to reduce an execution-suspended sentence when it revokes probation. In this case, therefore, the superior court's silence on the topic of sentence reduction does not constitute error, and the Court of Appeal should have affirmed the superior court's judgment.

I

In October 1994, after defendant Cadelia Louise Howard had pleaded guilty to one count of transporting cocaine base (Health & Saf. Code, § 11352, subd. (a)), the superior court sentenced her to four years in state prison but suspended execution of this sentence and granted her probation on certain terms and conditions. In April 1995, defendant was arrested for possessing .26 grams of cocaine. In July 1995, after finding that defendant had violated the terms and conditions of her probation, the superior court revoked probation and ordered execution of the four-year prison sentence. At this hearing, no one mentioned the possibility of reducing the four-year term.

Defendant appealed, arguing that in light of the evidence at the revocation hearing that she had regularly reported to her probation officer, had maintained employment, and had consistently tested negative for drugs, the superior court should have at least considered a reduction of the prison term. The Court of Appeal agreed. It concluded, first, that after revoking probation the superior court had authority to reduce the execution-suspended sentence, and, second, that because the evidence in the record provided some possible basis for reducing the sentence the superior court was required either to reduce the sentence or to explain on the record why it was not doing so. The Court of Appeal reversed the superior court's judgment and remanded the matter to that court with directions to consider whether defendant should be resentenced to a lesser term of imprisonment.

This court granted the People's petition for review of the Court of Appeal's decision.

## II

As the majority recognizes, the Legislature has given trial courts authority to reduce prison terms embodied in judgments that have become final. The controlling provision is subdivision (d) of Penal Code section 1170 (hereafter section 1170(d)), which reads: "When a defendant subject to this section or subdivision (b) of Section 1168 has been sentenced to be imprisoned in the state prison and has been committed to the custody of the Director of Corrections, the court may, within 120 days of the date of commitment on its own motion, or at any time upon the recommendation of the Director of Corrections or the Board of Prison Terms, recall the sentence and commitment previously ordered and resentence the defendant in the same manner as if he or she had not previously been sentenced, provided the new sentence, if any, is no greater than the initial sentence. . . ." The majority reads into this provision an implied limitation "that resentencing cannot occur at the time probation is revoked." (Maj. opn., *ante*, at p. 1095.)

The majority's construction of section 1170(d) serves no discernible legislative purpose and is inconsistent with this court's reasoning in *People v. Karaman* (1992) 4 Cal.4th 335 [14 Cal.Rptr.2d 801, 842 P.2d 100]. There, the superior court had pronounced a sentence imposing a term in state prison but had stayed the sentence for one week to allow the defendant to settle his affairs. After the stay expired, the superior court modified the judgment to impose a lesser term. The People appealed, arguing that the superior court lacked authority to modify the judgment. On review, this court rejected the People's argument.

Citing section 1170(d), this court stated that denying a superior court authority to mitigate punishment in this situation would be "inconsistent

with the modern statutory sentencing scheme, under which the Legislature explicitly has granted trial courts jurisdiction to mitigate a state prison sentence *even after* execution of a sentence has commenced." (*People* v. *Karaman, supra,* 4 Cal.4th 335, 351, original italics.) We further reasoned: "As a practical matter, to require a trial judge (who desires to resentence a defendant whose sentence has been stayed) to delay resentencing until the actual commencement of the defendant's prison term generally would entail a considerable waste of time and expense. The Legislature, although limiting the resentencing provisions of section 1170, subdivision (d), to the postcommitment situation, has not otherwise imposed any such requirement, and we likewise decline to do so." (*Id.* at p. 352.) This statement was followed immediately by our holding that "where the sentence is to a term of imprisonment, the trial court retains jurisdiction, during the period a stay is in effect and at any time prior to execution of the sentence, to reconsider the sentence and vacate it or impose any new sentence which is not greater than the initial sentence, just as it may do so on its own motion pursuant to section 1170, subdivision (d), within 120 days after the court has committed the defendant to the prison authorities." (*Ibid.*)

The logic of this court's decision in *People* v. *Karaman, supra,* 4 Cal.4th 335, applies with equal force to sentence reduction after revocation of probation. As the Court of Appeal aptly observed in this case, if a superior court decides after probation revocation that an execution-suspended sentence should be reduced, the court should be permitted to make that sentence reduction immediately, while the defendant is present in court, because requiring the court to wait until the defendant has entered the prison system and actually begun to serve the sentence, and to then bring the defendant back into court for a resentencing hearing, will result in the same "considerable waste of time and expense" that this court deplored in *Karaman*. To avoid this unnecessary inefficiency, this court concluded in *Karaman* that a trial court had authority to reduce the prison term of a defendant who had been granted a brief stay of execution and had not yet begun to serve the term. Similarly, to avoid a "considerable waste of time and expense," I conclude that at a single hearing a superior court may both revoke a defendant's probation and exercise its section 1170(d) authority to reduce the term of an execution-suspended sentence.

The majority argues that *Karaman* addressed "a situation that no statute directly controlled" (maj. opn., *ante,* at p. 1093), whereas the situation at issue here—probation revocation of a defendant with an execution-suspended sentence—is controlled by Penal Code section 1203.2, subdivision (c) (hereafter section 1203.2(c)), and by rule 435(b)(2) of the California Rules of Court (hereafter rule 435(b)(2)). Contrary to the majority, neither

section 1203.2(c) nor rule 435(b)(2) precludes the sentencing court from exercising its section 1170(d) authority at the time probation is revoked. In particular, nothing in either provision requires that the defendant actually enter the prison system and begin to serve the sentence before the sentencing court may exercise its section 1170(d) authority to resentence the defendant to a lesser term.

Section 1203.2(c) provides that, "[u]pon any revocation and termination of probation . . . , if the judgment has been pronounced and the execution thereof has been suspended, the court may revoke the suspension and order that the judgment shall be in full force and effect." Rule 435(b)(2) is similar; it reads: "If the execution of sentence was previously suspended, the judge shall order that the judgment previously pronounced be in full force and effect and that the defendant be committed to the custody of the Director of Corrections for the term prescribed in that judgment."

To fully comply with both section 1203.2(c) and rule 435(b)(2), a court that has revoked a defendant's probation need only order that a previously imposed judgment be in full force and effect and that the defendant be committed to the custody of the Director of Corrections for the term prescribed in that judgment. Having made this order, the court may then immediately recall the commitment under section 1170(d) and resentence the defendant to a lesser term. Nothing in the language of either provision requires that after an execution-suspended sentence is reactivated and ordered into effect, the defendant must leave the courtroom, enter the prison system, and serve one or more days of that sentence before the probation-revoking court may exercise its section 1170(d) sentence-reduction authority.

### III

Because I conclude, contrary to the majority, that at a single hearing a superior court may both revoke a defendant's probation and exercise its section 1170(d) authority to reduce the term of an execution-suspended sentence, I also address whether, as the Court of Appeal concluded, the superior court here erred in failing to state reasons for not exercising that authority. The superior court did not err.

A court is required to give reasons for sentence choices when it imposes sentence in the first instance. (See Cal. Rules of Court, rule 406(b).) Presumably, the superior court in this case gave reasons for its sentence choices when it pronounced sentence, the execution of which the court then stayed for the purpose of granting probation. If the court's statement of reasons was

incomplete or erroneous, defendant had an adequate remedy by appeal. When the court later revoked probation and ordered execution of the sentence it had previously imposed, the court expressed no dissatisfaction with the sentence choices it had previously made and previously explained. In this situation, no additional explanation of the basis for the sentence is needed.

As the majority and I both recognize, section 1170(d) is the source of the superior court's authority, following probation revocation, to mitigate punishment by reducing the term of imprisonment mandated by an execution-suspended sentence. But section 1170(d) specifies that the court is to exercise this authority only "on its own motion, or . . . upon the recommendation of the Director of Corrections or the Board of Prison Terms." Thus, the Legislature has not given criminal defendants standing to move for a reduction of their sentences under section 1170(d). (*People* v. *Pritchett* (1993) 20 Cal.App.4th 190, 193 [24 Cal.Rptr.2d 391].) If a defendant does request sentence reduction under section 1170(d), the court's denial of the request is not an appealable order because it does not affect the defendant's substantial rights. (*Pritchett, supra,* at p. 194.) In view of these unusual attributes of the section 1170(d) sentence-reduction authority, it would be highly incongruous to require a court to give reasons for not exercising that authority at the time of probation revocation, and neither defendant nor the Court of Appeal has cited any authority supporting the imposition of such a requirement. I would hold that no such requirement exists.

Because the Court of Appeal concluded otherwise, I concur in the judgment of this court reversing the judgment of the Court of Appeal.