Filed 3/19/21

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Calaveras)

----

| | |
|---|---|
| THE PEOPLE, | C090707 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 17F7159, 18F7255) |
| v. | |
| JASON WESLEY ANDAHL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Calaveras County, Timothy S. Healy, Judge. Affirmed as modified.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans, Jeffrey A. White, Deputy Attorney Generals, for Plaintiff and Respondent.


Defendant Jason Wesley Andahl appeals from a July 2019 judgment revoking his probation and executing a prison sentence of seven years eight months imposed in 2018 when he was first placed on probation. The sentence includes two prior prison term enhancements of one year under Penal Code section 667.5, subdivision (b).[1] Effective

---

[1] Further undesignated statutory references are to the Penal Code.

1

January 1, 2020, Senate Bill No. 136 (2019-2020 Reg. Sess.) (Senate Bill 136) amended section 667.5, subdivision (b) to limit qualifying prior prison terms to those served for sexually violent offenses, which defendant's prior offenses were not. The parties do not contest that Senate Bill 136 is retroactive under *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*).

On appeal, defendant claims that he is entitled to the benefit of Senate Bill 136 under the Supreme Court's decision in *People v. McKenzie* (2020) 9 Cal.5th 40 (*McKenzie*). *McKenzie* held that in accordance with *Estrada*, "a convicted defendant who is placed on probation after imposition of sentence is suspended, and who does not timely appeal from the order granting probation, may take advantage of ameliorative statutory amendments that take effect during a later appeal from a judgment revoking probation and imposing sentence." (*Id.* at p. 43.) The Attorney General responds that *McKenzie* does not govern because the 2018 order at issue here suspended the sentence's execution, as opposed to its imposition, and was therefore a final judgment for retroactivity purposes. We conclude that defendant has the better argument. We agree that, by virtue of the retroactive change in the law, defendant's one-year enhancements are unauthorized and must be stricken.

## I.  BACKGROUND

In October 2017, defendant was charged in case No. 17F7159 with willfully and unlawfully inflicting corporal injury upon S.M., with whom he was in a dating relationship (§ 273.5, subd. (a)—count I), criminal threats (§ 422—count II), and false imprisonment (§ 236—count III). The complaint further alleged that defendant had two prison priors (§ 667.5, subd. (b)).

In February 2018, the district attorney filed a second criminal complaint, in case No. 18F7255, charging defendant with criminal threats (§ 422—count I), taking or driving a vehicle without consent (Veh. Code, § 10851, subd. (a)—count II), buying or receiving a stolen vehicle (§ 496d, subd. (a)—count III), domestic battery (§ 243, subd.

2

(e)(1)—count IV), willfully and knowingly violating a protective order (§ 166, subd. (c)(1)—counts V and VI), and possessing drug paraphernalia (Health & Saf. Code, § 11364, subd. (a)—count VII).  The complaint further alleged, as to counts I through III, that defendant was on bail at the time of the new offenses (§ 12022.1) and that he had two prison priors (§ 667.5, subd. (b)).

On August 3, 2018, pursuant to a negotiated agreement, defendant entered a plea of guilty to the infliction of corporal injury as charged in count I of case No. 17F7159.  In exchange for his plea, the remaining counts and the special allegations in that case were dismissed on the People's motion.  As part of the plea agreement, defendant also entered a plea of no contest to the criminal threats charge in count I of case No. 18F7255 and admitted the two prison priors and the on-bail enhancement.  In exchange for his plea, the remaining six counts were dismissed on the People's motion.  That same day, pursuant to the parties' agreement, the trial court imposed a sentence of three years in prison for case No. 17F7159 and a sentence of four years eight months in state prison for case No. 18F7255.  Execution of both sentences were suspended, however, and defendant was placed on formal probation.  Defendant does not appear to have filed a notice of appeal challenging these sentences.

On March 4, 2019, petitions for revocation of probation were filed in both cases, alleging that defendant had committed numerous violations of the terms and conditions of his probation.  Both petitions recommended that the court terminate probation and execute the previously suspended sentences.  Defendant admitted the violations of probation in both cases.  On August 5, 2019, the trial court executed the sentences that had been previously suspended, and defendant was sentenced to state prison for a term of seven years eight months.

Defendant filed a timely notice of appeal.

3

## II. DISCUSSION

### A. *Application of Senate Bill 136*

Defendant claims that the section 667.5, subdivision (b) enhancements must be stricken because the judgment was not yet final when Senate Bill 136 became operative. We agree that he is entitled to the legislation's ameliorative effect.

In general, statutes are presumed to operate prospectively. (*People v. Brown* (2012) 54 Cal.4th 314, 323.) *Estrada* established an exception to this presumption: "When the Legislature has amended a statute to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date"—i.e., all defendants " 'to which [the statute] constitutionally could apply.' " (*Id.* at p. 323, fn. omitted, quoting *Estrada, supra*, 63 Cal.2d at p. 745.) "[F]or purposes of *Estrada* retroactivity, the focus is not on when a conviction becomes final but rather when the sentence imposed on that conviction becomes final," a question of law that we review de novo. (*People v. Martinez* (2020) 54 Cal.App.5th 885, 891, review granted Nov. 10, 2020, S264848 (*Martinez*).)

It is undisputed that Senate Bill 136's amendments to section 667.5, subdivision (b) are retroactive under *Estrada*, as several Court of Appeal decisions have held. (See e.g., *People v. Matthews* (2020) 47 Cal.App.5th 857, 865; *People v. Jennings* (2019) 42 Cal.App.5th 664, 682.) It is also undisputed that defendant's prior prison terms no longer qualify for an enhancement under section 667.5, subdivision (b) because his convictions for assault with a deadly weapon (§ 245, subd. (a)(1)) and false personation of another (§ 529, subd. (a)(3)) are not "sexually violent offense[s] as defined in subdivision (b) of Section 6600 of the Welfare and Institutions Code." (§ 667.5, subd. (b).) Instead, the parties disagree about whether there is a final judgment such that defendant cannot benefit from Senate Bill 136's amendments to section 667.5, subdivision (b).

4

The resolution of this question turns on *McKenzie*, which involved Senate Bill No. 180 (2017-2018 Reg. Sess.) (Senate Bill 180), legislation that amended Health and Safety Code section 11370.2 to restrict the applicability of a prior-conviction enhancement. (*McKenzie, supra*, 9 Cal.5th at p. 43.) *McKenzie* considered whether a defendant who did not appeal from a 2014 order suspending imposition of sentence and placing him on probation, but whose appeal from a 2016 order revoking probation and sentencing him to prison was pending when Senate Bill 180 took effect, was entitled to have the relevant enhancements stricken. (*McKenzie, supra*, at p. 43.) The Supreme Court concluded that he was because "the prosecution had not been 'reduced to final judgment at the time' the [statutory] revisions took effect." (*Id.* at p. 45.) In so holding, *McKenzie* rejected the People's argument that the enhancements could not be challenged because they became final under *Estrada* after the defendant failed to appeal from the order granting probation. (*Id.* at p. 46.)

The Attorney General argues that *McKenzie* is distinguishable because the original order granting probation in that case suspended imposition of the sentence, whereas the November 2018 order granting probation in this case imposed sentence and suspended its execution. Relying primarily on *People v. Howard* (1997) 16 Cal.4th 1081 (*Howard*), the Attorney General claims that "if the trial court imposes a sentence but suspends its execution and grants probation, a judgment has been made that will become final if no appeal is taken within 60 days." *Howard* held that if a trial court "actually imposes sentence but suspends its execution on granting probation, and the sentence becomes final and nonappealable," the court cannot, upon later revoking probation, "impose a new sentence different from the one previously imposed." (*Id.* at p. 1084.)

We agree with the Attorney General that the August 2018 order was final in the sense both that it was appealable and that the trial court would normally lack authority to change the imposed sentence before ordering its execution. (See *McKenzie, supra*, 9 Cal.5th at p. 46; *Howard, supra*, 16 Cal.4th at p. 1084; *People v. Mora* (2013)

5

214 Cal.App.4th 1477, 1482.)  But *Howard* and the other decisions the Attorney General cites did not involve *Estrada* retroactivity, and just because an order is "final" for one purpose does not mean it is for another.  (*McKenzie, supra*, at p. 47.)  For example, in *People v. Chavez* (2018) 4 Cal.5th 771 (*Chavez*), which *McKenzie* discussed at length, the Supreme Court explained that "neither form[] of probation—suspension of the imposition of sentence or suspension of the execution of sentence—results in a final judgment" in the context of whether a trial court has authority to dismiss an action under section 1385, meaning that "in the case of a successful probationer, final judgment is never pronounced." (*Chavez, supra*, at pp. 781, 777; see *McKenzie, supra*, at pp. 46-47.)

As *McKenzie* makes clear, the appropriate question in the context of *Estrada* retroactivity is whether the " ' "criminal proceeding . . . ha[s] . . . reached final disposition in the highest court authorized to review it." ' " (*McKenzie, supra*, 9 Cal.5th at p. 45.)  Here, defendant's criminal proceeding is clearly ongoing, as the trial court's order revoking his probation and executing the previously imposed prison sentence has not yet reached final disposition in the highest court in which review is available.  Thus, "[t]hat *McKenzie* considered a case where imposition of sentence was suspended, while [the order here] involve[ed] suspension of the execution of sentence, does not change our conclusion." (*Martinez, supra*, 54 Cal.App.5th at p. 893, rev. granted [holding that under *McKenzie*, a split sentence is not final for *Estrada* purposes].)

Recently, our colleagues in the Sixth Appellate District addressed the People's argument in a case involving the retroactive applicability of Senate Bill No. 620 (Reg. Sess. 2017-2018) (Senate Bill 620), and held that the logic of *McKenzie* applied in a case where the trial court had imposed sentence but suspended execution.  (*People v. Contreraz* (2020) 53 Cal.App.5th 965, 970-971 (*Contreraz*).)  The Sixth District observed the *McKenzie* court relied heavily on its opinion in *Chavez* and looked to *Chavez* for guidance on the issue:  "In reaching its decision, the California Supreme Court considered when a final judgment is pronounced in cases where a trial court grants

6

probation.  (*Chavez, supra*, 4 Cal.5th at p. 777.)  The court explained that, '[g]oing as far back as *Stephens v. Toomey* (1959) 51 Cal.2d 864, we have explained that neither form[] of probation—suspension of the imposition of sentence or suspension of the execution of sentence—results in a final judgment.'  [Citation.]  'In a case where a court suspends imposition of sentence, it pronounces no judgment at all, and a defendant is placed on probation with "no judgment pending against [him or her]."  [Citation.]  In the case where the court suspends execution of sentence, the sentence constitutes "a judgment provisional or conditional in nature."  [Citation.]  The finality of the sentence "depends on the outcome of the probationary proceeding" and "is not a final judgment" at the imposition of sentence and order to probation.'  [Citation.]  There is no final judgment in either of these situations because '[d]uring the probation period, the court retains the power to revoke probation and sentence the defendant to imprisonment' under sections 1203.2 and 1203.3.  (*Chavez, supra*, at p. 782.)  '[T]he court's power to punish the defendant, including by imposing imprisonment, continues during the period of probation.' "  (*Contreraz, supra,* at p. 971.)

The Sixth District concluded that Contreraz was eligible for relief under Senate Bill 620.  It reasoned that "Contreraz was ordered to probation in September 2017, and Sen. Bill 160 took effect on January 1, 2018, 'after the court ordered probation *and* the time for direct appeal lapsed.'  (*McKenzie, supra*, 9 Cal.5th at p. 50.)  Contreraz could not have argued on direct appeal that the trial court would, in the future, have the discretion to strike or dismiss the firearm enhancement imposed under section 12022.5."  (*Contreraz, supra*, 53 Cal.App.5th at p. 971.)

Similarly, in *Martinez, supra*, 54 Cal.App.5th 885, review granted, our colleagues in Division Six of the Second Appellate District recently held that the ameliorative benefits of Senate Bill 136 applied retroactively to an order revoking a sentence of mandatory supervision imposed as part of a split sentence under the Criminal Justice Realignment Act.  (*Martinez, supra*, at p. 889.)  Likening mandatory supervision to a

7

period of probation, the *Martinez* court stated "a split sentence consisting of a county jail term followed by a period of mandatory supervision does not automatically become a final judgment of conviction for purposes of *Estrada* retroactivity when the time to appeal from the imposition of that sentence expires. Where, as here, the trial court subsequently revokes supervision and the Legislature enacts an ameliorative statute prior to or during the pendency of an appeal from the revocation order, the defendant is entitled to seek relief under the new law." (*Ibid.*) Relying on *Chavez*, the *Martinez* court rejected the People's effort to distinguish *McKenzie* as they do here: "That *McKenzie* considered a case where imposition of sentence was suspended, while mandatory supervision involves suspension of the execution of sentence, does not change our conclusion." (*Id.* at p. 893.)

We agree with the reasoning of *Contreraz* and *Martinez*. It is notable that, although the Court of Appeal in *People v. McKenzie* (2018) 25 Cal.App.5th 1207 focused heavily on the differences between imposition of sentence and suspension of sentence, going so far as to comment that it would not hold that ameliorative amendments apply when the sentence is imposed (see *id.* at pp. 1213-1215), in affirming the Court of Appeal, the Supreme Court did not rely on this reasoning, but instead based its decision on the principles outlined in *Estrada* and *Chavez*. *Chavez* explained that "the pendency of a criminal action continues into and throughout the period of probation—when the court may still punish the defendant—but expires when that period ends." (*Chavez, supra*, 4 Cal.5th at p. 784.) Defendant's period of probation ended with the trial court's revocation order, which he timely appealed. During the time his appeal was pending, Senate Bill 136 came into effect. Under the reasoning of *Chavez*, defendant's case was not yet final when Senate Bill 136 became effective. He is therefore entitled to relief.

B.     *Remedy*

While we agree with defendant that Senate Bill 136 should be applied retroactively to his case, there is a question of the appropriate remedy under the

8

California Supreme Court's recent decision in *People v. Stamps* (2020) 9 Cal.5th 685, 705-709 (*Stamps*). The Attorney General addressed this issue in supplemental briefing, arguing that under *Stamps*, the case should be remanded and the district attorney may either accept the reduced sentence or withdraw from the plea agreement. Defendant did not address *Stamps* in his supplemental briefing. For the reasons stated in *People v. France* (2020) 58 Cal.App.5th 714, review granted Feb. 24, 2021, S266771 (*France*), as we will discuss, we disagree with the Attorney General that the remedy in *Stamps* is applicable.

In *Doe v. Harris* (2013) 57 Cal.4th 64 (*Doe*), "[o]ur Supreme Court held that plea agreements will generally be deemed to incorporate and contemplate the state's reserve power to change the law. ([*Id.*] at pp. 66, 73.) As a result, the mere fact that parties have entered into a plea agreement 'does not have the effect of insulating them from changes in the law that the Legislature has intended to apply to them,' and 'requiring the parties' compliance with changes in the law made retroactive to them does not violate the terms of the plea agreement.' " (*France, supra*, 58 Cal.App.5th at p. 724, rev. granted.)

In *Harris v. Superior Court* (2016) 1 Cal.5th 984 (*Harris*), our Supreme Court applied this principle to the case of a defendant seeking to have a nonviolent felony conviction reduced to a misdemeanor pursuant to Proposition 47. (*Id.* at p. 987.) The defendant in *Harris* had pled guilty to grand theft from the person, admitted a strike prior, and agreed to a six-year sentence in exchange for the People dismissing a robbery count and other charges. (*Id.* at p. 988.) "*Harris* considered whether the People were entitled to set aside [this] plea agreement when the defendant sought to have his sentence based on the agreement recalled under Proposition 47," and concluded the People were not. (*France, supra*, 58 Cal.App.5th at pp. 724-725, rev. granted.) *Harris* observed that by its plain language, Proposition 47's resentencing provision applies to convictions "by trial or plea" (§ 1170.18, subd. (a)), and the expressed intent of the proposition would be frustrated "if the prosecution could respond to a successful resentencing petition by

9

withdrawing from an underlying plea agreement and reinstating the original charges filed against the petitioner." (*Harris, supra*, at pp. 991-992.) *Harris* also supported its conclusion with a principle derived from *Doe*: that the Legislature or the electorate may change the law so as to " 'modify or invalidate the terms of an agreement.' ([*Doe, supra*, 57 Cal.4th] at p. 70.) . . . The electorate may bind the People to a unilateral change in a sentence without affording them the option to rescind the plea agreement. The electorate did so when it enacted Proposition 47." (*Id.* at p. 992.)

We conclude that Senate Bill 136 binds the People to a unilateral change in defendant's sentence. Our Supreme Court's decision in *Stamps* confirms that a statute can apply retroactively to plea agreements through the operation of *Estrada* even when the legislation is silent regarding plea agreements. (*Stamps, supra*, 9 Cal.5th at pp. 704-705.) Under *Estrada*, "[w]hen the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final." (*Estrada, supra*, 63 Cal.2d at p. 745.) Here, it is undisputed that Senate Bill 136 applies retroactively under *Estrada* and requires the elimination of one-year sentence enhancements that were imposed for prior prison terms that no longer support the enhancement. If we authorize the People to withdraw from the plea agreement and the trial court to withdraw its prior approval, this remedy may result in the defendant, paradoxically, facing a harsher sentence than he did before he asserted his rights under *Estrada*. (*Id.* at p. 745.) Such a result cannot be squared with the *Estrada* directive that a "lighter penalty" should be imposed whenever "it constitutionally could apply." (*Ibid.*)

10

For these reasons, we conclude the retroactive application of Senate Bill 136 under *Estrada* binds the People to a unilateral change in defendant's sentence.

The Attorney General urges a contrary result based on an overly broad reading of our Supreme Court's recent decision in *Stamps, supra*, 9 Cal.5th 685. *Stamps* addresses a different kind of ameliorative statute, Senate Bill No. 1393 (2017-2018 Reg. Sess.) (Senate Bill 1393), which amended subdivision (a) of section 667. Formerly, section 667, subdivision (a) mandated a five-year sentence enhancement for a defendant previously convicted of a serious felony and then convicted of a new serious felony. (Stats. 2018, ch. 1013, §§ 1, 2; see *Stamps, supra*, at pp. 692-693.) Senate Bill 1393 gave courts discretion to strike such an enhancement in the interest of justice pursuant to section 1385. (*Stamps, supra*, at pp. 693, 700.)

*Stamps* addressed the question of *how* to apply the amended statute retroactively under *Estrada*. (*Stamps, supra*, 9 Cal.5th at p. 700.) Critically, the court noted that "[e]ven when applicable, section 1385 ordinarily does not authorize a trial court to exercise its discretion to strike in contravention of a plea bargain for a specified term." (*Ibid.*) Thus, "[i]n order to justify a remand for the court to consider striking his serious felony enhancement while maintaining the remainder of his bargain, defendant must establish not only that Senate Bill 1393 applies retroactively, but that, in enacting that provision, the Legislature intended to overturn long-standing law that a court cannot unilaterally modify an agreed-upon term by striking portions of it under section 1385." (*Id.* at p. 701.) The Supreme Court did not believe the Legislature intended this result, but held defendant was entitled to an opportunity to seek the court's exercise of its new discretion. (*Id.* at pp. 701, 707.) However, the high court explained, should the trial court choose to exercise its new discretion and strike the enhancement, the People must be afforded the opportunity to rescind the plea agreement entirely. (*Id.* at p. 707.) In contrast, with Senate Bill 136, retroactive application of the Legislature's decision to invalidate a one-year sentence enhancement does not involve any unilateral action by the

11

trial court. This distinction was recently emphasized in *France*: "Under Senate Bill 1393, it is ultimately a trial court that chooses whether an enhancement is eliminated— meaning that Senate Bill 1393 directly implicates the prohibition on a trial court's ability to unilaterally modify an agreed-upon sentence. But under Senate Bill 136, the Legislature itself has mandated the striking of affected prison priors by making the enhancement portion of France's sentence illegal. [Citation.] Thus, Senate Bill 136 does not involve *Stamps*'s repeated and carefully phrased concern with the 'long-standing law that a *court* cannot *unilaterally* modify an agreed-upon term by striking portions of it under section 1385.' " (*France, supra*, 58 Cal.App.5th at pp. 728-729, rev. granted.)

We agree with the reasoning in *France* and conclude *Stamps* is distinguishable because Senate Bill 136 does not give a trial court discretion to *unilaterally* strike any enhancement and does not operate through section 1385. Instead, the Legislature itself has decided that a one-year enhancement not based upon a prior conviction for a sexually violent offense must be stricken. The identity of the decisionmaker is dispositive since, as *Stamps* recognizes, the Legislature " 'may bind the People to a unilateral change in a sentence without affording them the option to rescind the plea agreement,' " even as the trial court may not bind the People unilaterally. (Compare *Stamps, supra*, 9 Cal.5th at p. 703 [quoting *Harris, supra*, 1 Cal.5th at p. 992 and reasoning that the Legislature may unilaterally modify a plea agreement] with *Stamps, supra,* at p. 707 [a court may not unilaterally modify a plea agreement]; see *France, supra*, 58 Cal.App.5th at pp. 728-729, rev. granted.) When a case is remanded under Senate Bill 1393, the trial court can choose not to strike the enhancement and preserve the plea agreement, but a trial court applying Senate Bill 136 has no such option because an enhancement "cannot stand . . . when it rests upon conduct that is no longer sanctioned." (*People v. Collins* (1978) 21 Cal.3d 208, 214.)

We recognize that our colleagues in the Fifth District Court of Appeal and in Division Five of the First District Court of Appeal have reached a different conclusion

when addressing the same issue we decide today. (See *People v. Hernandez* (2020) 55 Cal.App.5th 942, 944-945, 946-948, review granted Jan. 27, 2021, S265739 [allowing the People to withdraw from a plea agreement when a one-year enhancement is stricken pursuant to Senate Bill 136]; *People v. Griffin* (2020) 57 Cal.App.5th 1088, 1095-1096, review granted Feb. 17, 2021, S266521 [same]; *People v. Joaquin* (2020) 58 Cal.App.5th 173, 177-178, review granted Feb. 24, 2021, S266594 [same].) We find *France* the better-reasoned opinion and agree that the remedy discussed in *Stamps* has no application to the legislative action invalidating the one-year sentence enhancements at issue in this case. Accordingly, we will strike the one-year enhancements and remand with an order to the trial court to prepare a corrected abstract of judgment.

### III. DISPOSITION

The one-year enhancements imposed pursuant to section 667.5, subdivision (b) are stricken. The trial court is ordered to correct the abstract of judgment in accordance with this opinion and to forward a certified copy to the Department of Corrections and Rehabilitation. As modified, the judgment is affirmed.

/S?

                                              _____

                                               RENNER, J.

I concur:

/S/

_____

BLEASE, Acting P. J.

Hull, J., Concurring and dissenting.

I concur in Parts I, and IIA. of the majority opinion; I dissent as to Part II B.

I agree with the reasoning of the court in *People v. Joaquin* (2020) 58 Cal.App.5th 173, review granted February 24, 2021, S266594, *People v. Griffin* (2020) 57 Cal.App.5th 1088, review granted February 17, 2021, S266521 and *People v. Hernandez* (2020) 55 Cal.App.5th 942, review granted January 27, 2021, S265739. I also agree with Justice Pollak's dissent in *People v. France* (2020) 58 Cal.App.5th 714, 731, review granted February 24, 2021, S266771. For those reasons, I would remand the matter to the trial court "to permit the district attorney to either accept a reduction of the sentence or to withdraw from the plea agreement."


/S/

_____

HULL, J.


1