Filed 4/4/14  P. v. Gunn CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Amador)

----

|  |  |
|---|---|
| THE PEOPLE, | C071451 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 11CR17880 & 11CR17987) |
| v. |  |
| JARED DANIEL GUNN, |  |
| Defendant and Appellant. |  |

Defendant Jared Daniel Gunn appeals sentences imposed after he entered guilty pleas in two cases pursuant to *People v. West* (1970) 3 Cal.3d 595 (*West*).  In the first case, No. 11CR17880, defendant pleaded guilty to causing corporal injury to a cohabitant in violation of Penal Code section 273.5, subdivision (a)[1] in exchange for a stipulated sentence of three years, and the dismissal of a second count, possession of a controlled

---

[1]  Undesignated statutory references are to the Penal Code.

1

substance (Health & Saf. Code § 11350, subd. (a)). In the second case No. 11CR17987, defendant pleaded guilty to one count of dissuading a witness by force or threat in violation of section 136.1, subdivision (c)(1) in exchange for a stipulated sentence of three years, to be served concurrently with the three-year term imposed on the first case, and the dismissal of a second count, disobeying a domestic relations court order (§ 273.6, subd. (a)). The parties agreed that a special allegation that defendant was out on bail when he committed the offense (§ 12022.1) would be stricken, and another pending criminal case would be dismissed in its entirety. Consistent with the negotiated terms of the agreement, the trial court suspended execution of the concurrent three-year prison sentences and placed defendant on probation. Defendant's probation was later revoked. Thereafter, the trial court imposed a one-year state prison term in the first case, to run consecutively to a three-year state prison term in the second case. The trial court also ordered defendant to pay a $400 domestic violence fee (former § 1203.097; Stats. 2010, ch. 132, § 1)[2] in both cases. The court awarded appellant 561 days of presentence custody credits and applied those credits to the second case.

On appeal, defendant contends that: (1) the court erred in imposing a consecutive sentence in the first case, (2) the court erred in imposing the $400 domestic violence fund fees because the fees were not authorized under former section 1203.097 for persons sentenced to state prison, and (3) the court erred in calculating defendant's presentence custody credits. The People agree with defendant that the consecutive sentences were erroneously imposed and the presentence custody credits were miscalculated. However, the People contend that the domestic violence fund fees were the original fees imposed at the time probation was granted in accordance with former section 1203.097, and that no

---

[2] Section 1203.097 was amended in 2012 to increase the domestic violence fee from $400 to a "minimum payment" of $500. (§ 1203.097, subd. (a)(5)(A); Stats. 2012, ch. 628, § 1.5.)

provision relieves a defendant whose probation is revoked and sentenced to state prison from the responsibility of paying those fees. Defendant did not file a reply brief responding to this argument.

We conclude that defendant's sentence should be modified to reflect the previously imposed concurrent sentences in both cases and that he should be awarded a total of 150 days' credit in the first case and 530 days' credits in the second case. We also conclude that the two $400 domestic violence fund fees were properly imposed when probation was granted under former section 1203.097 and that defendant is still responsible for paying those fees, even though he has now been sentenced to state prison.

We order modification of defendant's sentence and his credits but otherwise affirm. `

## FACTUAL AND PROCEDURAL BACKGROUND
### The First Case - Case No. 11CR17880

On February 3, 2011, an Amador County Sheriff's Department deputy was dispatched to a residence in Martell in response to a report of domestic violence.[3] The victim, A.A., who was defendant's girlfriend at the time, reported that defendant had "kicked her in the legs several times, grabbed her right wrist and held her while he struck her in the back of the head six times with a stereo remote control, threw a can of soda at her and threatened to kick her in the stomach." At the time, A.A. was six months pregnant with defendant's child. A.A. stated that defendant had been drinking and consuming drugs. A.A. sustained multiple contusions to the top of her head and abrasions on the back of her neck, lower back, and right shoulder. Later that day, the deputies located and arrested defendant. During his arrest, he was found to be in possession of 16 codeine pills, two flexaril pills and three cyclobenzaprine hydrochloride

---

[3] All facts are taken from the probation reports.

3

pills, none of which he had prescriptions for. These facts formed the basis for the criminal complaint in the first case, filed on February 4, 2011, which charged defendant with one count of causing corporal injury to a cohabitant (§ 273.5, subd. (a)) and one count of possession of a controlled substance, codeine (Health and Saf. Code, § 11350, subd. (a)). A criminal protective order issued under Penal Code section 136.2, ordering, among other things, that defendant have no contact with A.A.

### The Second Case - Case No. 11CR17987

On February 28, 2011, an Amador County Sheriff's Department deputy was dispatched to a residence in Jackson in response to a report of a court order violation. A.A. told the deputy that her ex-boyfriend, defendant, had been arrested for domestic violence against her and was subject to a no-contact restraining order. A.A. showed the deputy several text messages she had received from defendant during the early morning hours of February 28, in which he made various threats. A.A. further stated that in other messages, defendant said he would send his "home girls," which she understood to mean that he would send people to beat her up, and he also told her not to report the incidents to law enforcement. These facts formed the basis for the criminal complaint in the second case, filed on March 9, 2011, which charged defendant with one count of dissuading a witness by force or threat (§ 136.1, subd. (c)(1)) with a special allegation that defendant committed the offense while released on bail (§ 12022.1) and one count of disobeying a domestic relations court order (§ 273.6, subd. (a)).

### The Plea Agreement and Grant of Probation

On September 29, 2011, pursuant to a plea agreement, defendant entered a *West* plea of guilty to the first counts in both cases in exchange for a stipulated three-year prison term to run concurrently. Execution of the concurrent state prison sentences was to be suspended and defendant granted five years of felony probation. The agreement noted that defendant would serve one year in a residential drug treatment program and

4

one year in a domestic violence prevention program in both cases.  Pursuant to the agreement, the People dismissed all other counts and allegations as previously noted.

On December 20, 2011, at sentencing, the trial court imposed concurrent three-year state prison terms, suspended execution of the sentences and placed defendant on five years' probation with various conditions, including completion of drug treatment and batterer's programs and payment of a $400 domestic violence fund fee in each case pursuant to former section 1203.097.  The court also granted a criminal protective order, requiring, among other things, that defendant have no contact with A.A.

### Violation of Probation and State Prison Sentencing

On March 14, 2012, the Amador County Probation Department filed a petition to revoke defendant's probation in both cases because he failed to complete the drug and alcohol treatment program and failed to notify the probation department of his new address.  Ten days later, defendant was arrested on bench warrants issued in both cases.  On April 2, 2012, the probation department filed an amended revocation petition, which added the allegation that on March 13, 2012, defendant had violated the no-contact order and harassed A.A. again.  On April 30, 2012, the probation department filed a second amended petition alleging that on April 17, 2012, defendant committed a battery in violation of section 243, subdivision (a).[4]  Defendant initially denied the allegations.  On May 25, 2012, defendant admitted the allegations in the second amended revocation petition except for the battery allegation, which was stricken.

On May 29, 2012, the court revoked defendant's probation and sentenced him to prison for a midterm prison sentence of three years on the second case.  On the first case, the court sentenced defendant to one year (one-third the midterm), to be served consecutively to the three-year term imposed in the second case.  He was ordered to pay

---

[4]  This incident happened while defendant was in the jail.

5

various fees and fines, including a $400 domestic violence fee in each case pursuant to former section 1203.097. The court awarded a total of 561 days of presentence custody credits, consisting of 381 actual days and 180 days' conduct credits, and applied the credits to the second case.

On June 19, 2012, defendant filed a timely notice of appeal. On July 17, 2012, he filed an ex parte motion to amend the abstract of judgment to include additional presentence custody credits, which was denied because defendant's petition requested fewer credits than he had been awarded at sentencing.

## DISCUSSION

## I. Consecutive Sentences

Defendant contends that the trial court lacked authority to impose consecutive sentences in his two cases upon revocation of his probation because, pursuant to the plea agreement, the two three-year sentences were to be served concurrently. The People agree with defendant, and so do we.

When a trial court revokes probation in a case where sentence has been imposed and its execution suspended, the court may not modify the sentence that was originally imposed. (See § 1203.2, subd. (c); Cal. Rules of Court, rule 4.435.) "[S]ection 1203.2, subdivision (c), and rule 435(b)(2) [now rule 4.435(b)(2)], by their terms, limit the court's power in situations in which the court chose to impose sentence but suspended its execution pending a term of probation. On revocation of probation, if the court previously had imposed sentence, the sentencing judge must order that exact sentence into effect. [Citations]." (*People v. Howard* (1997) 16 Cal.4th 1081, 1088.) Thus, the consecutive terms imposed by the trial court were not only inconsistent with the negotiated plea agreement, but also unauthorized by law.[5] Accordingly, we agree with

_____

[5] Before defendant admitted the violation of probation, the trial court told defendant, "a three-year state prison execution suspended would be imposed, but by operation of law

6

defendant and the People that the sentence should be modified in accordance with the originally imposed sentence, such that the previously suspended three-year sentences are served concurrently, for a total aggregate term of three years in state prison.

## II. Domestic Violence Fund Fee

Defendant contends that the two $400 domestic violence fund fees the court ordered defendant to pay upon revocation of his probation were unauthorized and must be stricken. He argues that because former section 1203.097, subdivision (a) states that the fee imposed under that section applies only to persons placed on probation, fees under this provision could not be imposed after the revocation of his probation. Defendant concludes that because his probation was not reinstated, the domestic violence fund fees were unauthorized and must be stricken.

The People contend that while defendant is correct that the domestic violence fund fees may only be imposed if a person is granted probation, there is no relief of responsibility for the fee if probation is revoked. (Former § 1203.097.) We agree with the People. No provision relieves a defendant of responsibility for this fee when probation is revoked. Thus, we conclude that the original $400 domestic violence fund fees imposed in each case when defendant was granted probation continue to be due and payable.

---

the Court would have to make one of those one-third the mid-term." Later, after the admission, the court stated, "Subordinate term will be the 273.5 even though the three years execution suspended, by operation of law, I've got to make the second one a one-third the mid-term which would be an additional year." At sentencing, the court stated that the sentence on the first case "has to be one-third the base term." While a court *may* in its discretion sentence a defendant to consecutive terms when the defendant is convicted of a felony and a felony violation of section 136.1 committed against the victim of the felony, if the court does so, the subordinate term *shall* consist of the full middle term of imprisonment for the felony for which the consecutive term is imposed, not one-third the midterm. (§ 1170.15; see also *People v. Hennessey* (1995) 37 Cal.App.4th 1830, 1835 [ § 1170.15 is an alternative sentencing scheme].)

### III. Presence Custody Credits

Defendant contends that the court erred in calculating his presence custody credits. When defendant's probation was revoked and he was sentenced to prison, the court awarded a total of 561 days of presence custody credits, consisting of 381 actual days and 180 conduct credit days, and applied the credits to the second case. Defendant contends that the total for both cases falls short by 119 credits, and that his presence custody credit should total 688 days. The People appropriately concede the point.

On September 28, 2010, as an urgency measure effective on that date, the Legislature enacted Senate Bill No. 76 (2009-2010 Reg. Sess.) (see Stats. 2010, ch. 426), which amended section 2933 regarding presence conduct credits for defendants sentenced to state prison. The amendment gave qualifying prisoners one day of presence conduct credit for each day of actual presence confinement served (Sen. Bill. No. 76, § 1; Pen. Code, § 2933, subd. (e)(1)-(3)), thereby eliminating the loss of one day of presence conduct credit under the rate specified by Senate Bill No. 3X 18 (2009-2010 3d Ex. Sess. (see Stats. 2009, ch. 28, § 50), when the person served an odd number of days in presence custody. It also eliminated the directive in Penal Code section 4019 that no presence conduct days may be credited for commitments of fewer than four days. (Sen. Bill No. 76; § 2; Pen. Code, § 4019, subd. (g).) Sections 4019 and 2933 were again amended in October 2011; however, under section 4019, subdivision (h), this most recent amendment applies only to persons who commit crimes on or after October 1, 2011.

Because defendant's crimes in the first case, case No. 11CR17880, were committed in February 2011, his presence custody credits should have been calculated according to the September 2010 amendment to section 2933. (Stats. 2010, ch. 426, § 1.) Therefore, defendant should have received one day of conduct credit for each day of actual presence confinement served in that case. (Pen. Code, former § 2933, subd. (e)(1).) However, in the second case, case No. 11CR17987, defendant committed

8

a serious felony, which made him ineligible for the additional credits under former section 2933, subdivision (e)(1), and his credits therefore should have been calculated according to the September 2010 amendment to section 4019 instead. (Former § 4019, subd. (f).)

In the first case, case No. 11CR17880, defendant was in custody from February 3, 2011 to February 9, 2011, and should have been awarded a total of 14 presentence custody credits, consisting of seven actual days and seven days' conduct credit. Additionally, defendant was in custody for 68 days from March 23, 2012 to May 29, 2012, and should have been awarded a total of 136 presentence custody credits, consisting of 68 actual days and 68 days' conduct credit. Therefore, in total, defendant should have received credit for 150 days in the first case, case No. 11CR17880.

In the second case, case No. 11CR17987, defendant was in custody from March 10, 2011 to December 20, 2011 for dissuading a witness by force, a serious felony under section 1192.7, and therefore he was not entitled to the enhanced credit provisions of former section 2933 but was still entitled to two days of conduct credits for every four days served under former section 4019, subdivision (f). Accordingly, he should have been awarded a total of 428 presentence custody credits, consisting of 286 actual days and 142 conduct credit days.[6] Additionally, defendant was in custody in the second case, case No. 11CR17987 from March 23, 2012 to May 29, 2012, and should have been awarded a total of 102 days of presentence custody credit, consisting of 68 actual days

_____

[6] "The proper method of calculating these presentence custody credits is to divide by four the number of actual presentence days in custody, discounting any remainder. That whole-number quotient is then multiplied by two to arrive at the number of good/work credits. Those credits are then added to the number of actual presentence days spent in custody, to arrive at the total number of presentence custody credits. [Citations.]" (*People v. Culp* (2002) 100 Cal.App.4th 1278, 1283.) In this case, 286 divided by four is 71.5, which is discounted to 71 and then multiplied by two for a total of 142 conduct credits.

and 34 conduct credit days.[7]  Therefore, in total, defendant should have received 530 credits in case No. 11CR17987.   We conclude that defendant's sentence and the abstract of judgment should be modified to reflect 150 days of presentence credit in case No. 11CR17880 and 530 days of presentence credit in case No. 11CR17987.

## DISPOSITION

The judgment is modified to vacate the one-year consecutive sentence imposed on case No. 11CR17880 and instead execute the originally imposed three-year sentence on that case to be served concurrently with the three-year sentence imposed on case No. 11CR17987.  The judgment is further modified to award 150 days of presentence custody credits in case No. 11CR17880 and 530 days of presentence custody credits in case No. 11CR17987 for a total of 680 credits.  In all other respects, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment reflecting the judgment as modified, and to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.


      MURRAY      , J.


We concur:


      BLEASE      , Acting P. J.


      MAURO      , J.

---

[7]  68 divided by four is 17, which is multiplied by two for a total of 34 conduct credits.