Filed 10/2/14  P. v. Fields CA5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CARLTON DWAYNE FIELDS,<br><br>Defendant and Appellant. | F066617<br><br>(Super. Ct. Nos. F11903982 & F09905868)<br><br>**O P I N I O N** |

## THE COURT*

APPEAL from a judgment of the Superior Court of Fresno County.  Arlan L. Harrell, Judge.

Emry J. Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Ward A. Campbell and Sean M. McCoy, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*        Before Kane, Acting P.J., Detjen, J., and Franson, J.

In case No. F09905868, appellant, Carlton Dwayne Fields, pled no contest to possession of cocaine base (Health & Saf. Code, § 11350, subd. (a)) and admitted a prior prison term enhancement (Pen. Code, § 667.5, subd. (b))[1] and allegations that he had a prior conviction within the meaning of the three strikes law (§ 667, subd. (b)-(i)).

In case No. F11903982, Fields pled no contest to several criminal charges and admitted a great bodily injury enhancement (§ 12022.7) in one count, a serious felony enhancement (§ 667, subd. (a)), a prior prison term enhancement, and allegations that he had a prior conviction within the meaning of the three strikes law.

On appeal, Fields contends the court abused its discretion when it: 1) denied his request for a grant of probation in both cases; denied his motion to strike his strike conviction; and 3) failed to reinstate his probation in case No. F09905868. Alternatively, Fields contends defense counsel provided ineffective representation by his failure to develop the evidence in the record of drug psychosis syndrome for purposes of mitigating his sentence.

Respondent contends the court's oral pronouncement of judgment differs from the minute orders of Fields's sentencing hearing, the abstract of judgment does not accurately reflect the judgment, and that the court erred by its failure to impose sentence on Fields's vandalism conviction. We will find merit to Respondent's contentions. Additionally, our review of the record disclosed that the court committed various sentencing errors and we will remand the matter for further proceedings.

---

[1] All further statutory references are to the Penal Code unless otherwise noted.

2

## FACTS

*Case No. No. F09905868*

On October 12, 2009, Fresno police officers observed Fields and another man as they appeared to be handing something back and forth to each other. The officers contacted Fields and found .08 grams of cocaine base on him.

On October 14, 2009, the district attorney filed a complaint charging Fields with possession of cocaine base (Health & Saf. Code, § 11350, subd. (a)), a prior prison term enhancement (§ 667.5, subd. (b)), and having a prior conviction within the meaning of the three strikes law (§ 667, subds. (b)-(e)).

On November 16, 2009, Fields pled guilty to possession of cocaine base and admitted the enhancement and prior conviction allegations.

On December 21, 2009, the court struck Fields's prior strike conviction and sentenced him to an aggregate four-year term, the upper term of three years on Field's possession conviction and a one-year prior prison term enhancement. The court then suspended execution of sentence and placed Fields on probation for three years.

*Case No. No. F11903982*

In May through July 2011, Jane Doe lived on and off with Fields in an apartment in Fresno. On the evening of July 2, 2012, she and Fields argued because Fields believed she had been unfaithful to him. During the argument, Fields repeatedly threatened to kill her as he paced back and forth from the living room to the kitchen holding a cake knife. At one point, Fields touched Doe on the stomach with the knife. Eventually, Doe left the apartment and Fields followed her outside where they continued arguing. Fields then lifted Doe off the ground and slammed her on the ground. Afterwards, Doe walked back to the apartment to get her belongings to leave but wound up staying there. The following morning Fields and Doe continued arguing and Fields punched Doe in her right eye, which caused her eye to go blind. Fields also grabbed Doe by the neck and slapped

3

her on the face.  Prior to these incidents, Fields had assaulted Doe on four or five other separate occasions.

On July 3, 2011, Fresno Police Officer Leonard Turk arrested Fields and transported him to the Fresno County Jail.  While Turk used a computer in the patrol car to type out an arrest report, Fields kept asking for water.  Turk told Fields to calm down and he would get Fields some water as soon as they entered the jail.  Fields told the officer that if he did not get him some water, he was going to kick the patrol car's window out.  He then began kicking a rear window on the patrol car, damaging it.

*The Psychological Evaluations*

On August 17, 2011, after an issue arose regarding Fields's mental competence, the court suspended criminal proceedings and appointed Drs. Howard Terrell and Paula Willis to evaluate Fields.

Dr. Terrell examined Fields on August 22, 2011.  In his written evaluation, Dr. Terrell described Fields as appearing to be "floridly psychotic."  Fields told Dr. Terrell that he experienced hallucinations every day.  According to Dr. Terrell, Fields showed evidence of intermittent thought blocking and frequent loose associations and he appeared to be responding to internal stimuli throughout the interview.  Dr. Terrell diagnosed Fields with nonspecific psychosis and cocaine abuse that was in institutional remission.  He recommended the court find Fields mentally incompetent.

On August 25, 2011, Dr. Paula Willis evaluated Fields.  Fields did not indicate to Dr. Willis that he had a history of mental disorders.  Dr. Willis noted that although Fields claimed he heard voices, he did not exhibit any outward signs of psychosis, his jail records did not indicate he ever exhibited psychotic symptoms, and Fields's thought processes appeared clear, well organized and without delusional content.  Dr. Willis administered the Miller Forensic Assessment of Symptoms Test (M-FAST) to Fields, which is used as a screening tool for malingering symptoms of mental illness.  Dr. Willis

4

found that some of the symptoms Fields claimed he was experiencing indicated he was feigning mental illness and most of his responses were inconsistent with a true clinical disorder. She concluded that Fields was suffering from substance abuse, that if he suffered any psychotic episodes they may have been induced by illicit drug use, and that there was no evidence that he suffered from a thought disorder while not under the influence of drugs. Fields also refused to answer most of the questions on the "Revised-CA1" and mental status examination, which is common for someone who attempts to manipulate the examiner to avoid the detection of malingering. Dr. Willis concluded that Fields did not exhibit any symptoms of a thought disorder that would render him incompetent.

On September 21, 2011, the court appointed Dr. Stephen Pointkowski to examine Fields. During his subsequent examination of Fields, Dr. Pointkowski noted that "[j]ail psychiatric records reflected no credible psychotic symptoms and a pattern of manipulation." Although Fields initially stated that he continuously experienced auditory hallucinations, he later described them as intermittent. Additionally, although Fields claimed to have been experiencing auditory hallucinations throughout the interview, at no time did he appear distracted or to be responding to internal stimuli. In concluding that Fields was probably competent to stand trial, Dr. Pointkowski wrote,

> "[Fields] presented with numerous atypical psychotic symptoms ... and has a documented history of manipulation. Furthermore, the absence of other symptoms which are generally associated with psychotic-spectrum disorders also diminished the credibility of his alleged psychotic symptoms. In all likelihood, Mr. Fields feigned psychotic symptoms and ignorance about legal terminology and processes."

Dr. Pointkowski also diagnosed Fields with "malingering (provisional)."

On October 24, 2011, the court found Fields competent and reinstated criminal proceedings.

On February 23, 2012, after an issue regarding Fields's competency again arose, the court suspended criminal proceedings and it appointed Drs. Harold Seymour and Robert Taylor to examine Fields.

On March 16, 2012, Dr. Taylor examined Fields. During the interview, Fields appeared to be having an intense interaction with an imaginary woman. However, he appeared surprisingly calm, unlike a person experiencing a genuine hallucination where the imaginary person was tormenting him.

Dr. Taylor administered the M-FAST to Fields and he earned a total score of 12, which is a level of performance consistent with malingering psychiatric illness. Fields also reported rare combinations of symptoms and unusual hallucinations that are not typically endorsed by genuine psychiatric patients such as hallucinations that lasted continuously for days and feeling imaginary things crawling on him. On the Inventory of Legal Knowledge (ILK) test, Fields scored significantly below what is expected by chance and this provided compelling evidence that Fields was feigning deficits in legal knowledge.

In reviewing Fields's jail psychiatric services (JPS) records, Dr. Taylor noted that Fields had not exhibited psychotic or manic symptoms to JPS staff and his thought processes had been intact and linear. The JPS records also indicated that Fields had a minimal history of psychiatric treatment that had occurred exclusively while incarcerated whereas people who genuinely suffer psychotic symptoms typically have a lengthy history of psychiatric treatment and hospitalizations. Dr. Taylor further noted that Fields claimed he was unable to remember where he was born, his name, his parents' names or his last employment, that Fields would have to be suffering from severe dementia in order for these claims to be credible, and that he did not have a history of such a severe neurological impairment. Dr. Taylor concluded that Fields was malingering psychotic and manic symptoms and recommended the court find him competent to stand trial.

6

Dr. Seymour also evaluated Fields on March 16, 2012. Dr. Seymour noted that Fields's thought process was disorganized and that he was experiencing auditory and tactile hallucinations. Dr. Seymour diagnosed Fields with cocaine dependence, in institutional remission, marijuana abuse, in institutional remission, and psychotic disorder not otherwise specified, and *he ruled out substance induced psychotic disorder*. Dr. Seymour noted that tactile hallucinations are commonly associated with cocaine dependency and he recommended that the court find Fields not competent to stand trial.

On March 22, 2012, the court ordered that Fields again be evaluated by Dr. Terrell.

On March 24, 2012, Dr. Terrell met with Fields for about eight minutes at the jail because Fields was extremely uncooperative. Fields fluctuated from laughing and giggling in a hilarious manner to clenching his fist and making angry hostile statements in a manner suggestive of a psychotic individual who was about to become explosively violent. Based on this short encounter, Dr. Terrell diagnosed Fields with a psychotic disorder, NOS, and he recommended that the court find Fields not competent to stand trial.

On April 26, 2012, the court found Fields incompetent to stand trial.

On June 1, 2012, the court committed Fields to Atascadero State Hospital and he was admitted there on August 2, 2012. In the admission report, psychiatrist Aliuddin Khaja, M.D., noted that Fields reported symptoms that were not typical for psychiatrically ill patients. Dr. Khaja also noted that Fields's memory/cognitive deficits and his spelling and mathematical skills did not seem to correspond to his reported education level and were not consistent with a mentally ill patient. Fields's initial diagnosis was malingering, polysubstance dependence, and antisocial personality disorder.

7

Dr. B. Tehrani subsequently performed a malingering evaluation using the following measures that were intended to detect malingering: the Structured Inventory of Malingering Symptoms (SIMS); the Structured Inventory of Reported Symptoms (SIRS); the ILK; and the Test of Memory Malingering (TOMM). Three of these measures indicated Fields was feigning or exaggerating symptoms. On the SIMS, Fields reported psychotic symptoms that are rarely reported by bona fide psychiatric patients and memory, neurological, and intellectual impairment that was inconsistent with the pattern of symptoms observed in patients with true brain injuries. Further, the level of psychiatric impairment reported by Fields would generally be observed in a patient who was floridly psychotic and had major neurological or intellectual impairment or amnesiac disorder at the same time. However, Fields's history and presentation were not consistent with someone with that level of impairment and he was able to function without difficulty and get his needs met on a daily basis in his unit.

The results of the SIRS also indicated malingering because "Fields endorsed an unlikely number of symptoms with extreme or unbearable severity suggesting a strong likelihood he was exaggerating the severity of his impairment" and "[a]ccording to his test scores, he endorsed probable and definite feigning." Further, his performance on the ILK indicated a below chance performance, which implicated feigned deficits in legal knowledge.

An assessment report by the hospital filed on September 12, 2012, noted the observations and conclusions of Drs. Khaja and Tehrani and it reviewed the reports of the other doctors who examined Fields. The report also noted that unit staff and Fields's treatment team had not observed Fields exhibiting any overt psychiatric symptoms and that his behavior appeared to be well organized and due to manipulative personality traits and not from a genuine thought or mood disorder. Additionally, Fields's behavior was goal oriented and not impulsive or disorganized as would be true of a person with a

8

genuine thought disorder. Based on the psychological tests and inconsistencies in Fields's behavior, the treatment team diagnosed Fields with malingering. The report recommended that Fields be "returned to court as competent to stand trial."

On September 19, 2012, the court considered the report from Atascadero State Hospital, found Fields competent, and reinstated criminal proceedings.

**Fields's Plea and Sentencing**

On December 12, 2012, the district attorney filed a first amended information charging fields with inflicting corporal injury on a cohabitant with a prior conviction (count 1/§ 273.5, subd. (e)(1)), mayhem (count 2/§ 203), battery with serious bodily injury (count 3/§ 243, subd. (d)), assault with a deadly weapon (count 4/§ 245, subd. (a)(1)), criminal threats (count 5/§ 422), and misdemeanor vandalism (count 6/§ 594, subd. (a)(2)). The information also alleged a great bodily injury enhancement involving domestic violence in count 1 (§ 12022.7, subd. (e)), a serious felony enhancement (§ 667, subd. (a)), a prior prison term enhancement (§ 667.5, subd. (b)), and that Fields had a prior conviction within the meaning of the three strikes law (§ 667, subds. (b)-(e)). That same day, Fields pled no contest to the six counts and admitted the enhancements and the three strikes allegations.

On January 22, 2013, defense counsel filed a sentencing memorandum arguing, in pertinent part, that the court should strike the three strikes allegations because: 1) Fields's criminal conduct resulted from substance abuse; 2) Drs. Seymour and Terrell diagnosed Fields as suffering from a mental condition that significantly reduced his culpability for his offenses; and 3) Fields had never received any treatment for his psychiatric problems.

On January 29, 2013, at Fields's sentencing hearing, the court granted the defense's request to take judicial notice of the prior psychological evaluations that were performed on Fields. The court also noted that it had reviewed those reports including the one from Atascadero State Hospital. Defense counsel argued that Fields's recent

9

criminal activity stemmed from a mental or psychotic disorder that decreased his culpability and he asked the court to grant Fields probation or, alternatively, strike his strike conviction. The court denied both requests.

Thereafter, in case No. F11903982, the court struck the prior prison term enhancement in that case and sentenced Fields to an aggregate 18-year-term: the middle term of four years on Fields's domestic violence conviction, doubled because of his prior strike conviction, a five-year great bodily injury enhancement, and a five-year serious felony enhancement in that count; a stayed 16-year term on his mayhem conviction (a doubled aggravated term of eight years); a stayed, doubled, aggravated term on his battery with serious bodily injury conviction; a stayed, doubled, aggravated term on his assault with a deadly weapon conviction; and a stayed, doubled, aggravated term on his criminal threats conviction. The court also awarded Fields 350 days of presentence conduct credit consisting of 212 days of presentence actual custody credit, 106 days of conduct credit, and 32 days credit for the days he was in custody being treated at Atascadero State Hospital.

In case No. F09905868, after finding that Fields violated his probation based on his plea to the charges in case No. F11903982, the court lifted the stay on the previously imposed sentence and imposed a consecutive one-year term in that case, bringing his total aggregate term in both cases to 19 years. The court also awarded Fields presentence custody credit in that case of 332 days consisting of 261 days of presentence actual custody credit, 39 days of presentence conduct credit, and 32 days for the days he spent receiving treatment at Atascadero State Hospital.[2]

---

**2** The court also dismissed an unrelated misdemeanor charge of vandalism while in custody (§ 4600, subd. (a)).

After the court sentenced him, Fields complained that the court was not taking his drug problem into consideration, stating:

> "My only argument in my own defense at this point is I don't feel the Court is taking into consideration the drug problem. *Not the mental problem. Clearly I could not speak to the Court as I am today if I had some substantial mental health problem. The Court found me incompetent to stand trial because of my behavior.* But the drug problem I don't feel is being taken into ... strong enough consideration. I personally know, despite what the People feel about me, I know who I am, I know what I'm capable of, and I know that my problems that I suffered from were drug problems." (Italics added.)

## DISCUSSION

### *The Court's Failure to Strike Fields's Strike Conviction, Reinstate Probation in Case No. F09905868, and Grant Probation in Case No. F11903982*

Fields contends the record establishes he was suffering from drug psychosis syndrome. He further contends the court failed to give full, mitigating weight to the effect of this syndrome on his behavior in denying his *Romero*[3] motion, in not reinstating probation in case No. F09905868, and in denying him probation in case No. F11903982. We disagree.

Section 667, subdivision (c) in pertinent part provides:

> "Notwithstanding any other law, if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior serious and/or violent felony convictions ..., the court shall adhere to each of the following: [¶] ... [¶] (2) *Probation for the current offense shall not be granted, nor shall execution or imposition of the sentence be suspended for any prior offense*." (Italics added.)

Thus, the principal issue in this case is whether the court abused its discretion when it denied Fields's motion to strike his prior strike conviction because it rendered

---

[3] *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

Fields ineligible for a grant of probation in case No. F11903982 or to have his probation reinstated in case No. F09905868.

In deciding whether to strike a prior conviction, "the court in question must consider whether, in light of the nature and circumstances of [the defendant's] present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

The trial court's decision is "subject to review for abuse of discretion. This standard is deferential." (*People v. Williams*, *supra*, 17 Cal.4th 148 at p. 162.) "In reviewing for abuse of discretion, we are guided by two fundamental precepts. First, '"[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve the legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."' [Citations.] Second, a '"decision will not be reversed merely because reasonable people might disagree. 'An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge.'"' [Citations.] Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 376-377.)

Fields's probation report indicates that Fields had a dismal criminal record that began in 1996 when he was convicted of exhibiting a deadly weapon other than a firearm. In 2000 he was convicted of being drunk in public and resisting arrest, in 2001 of battery

12

on a spouse, in 2005 of assault with a deadly weapon and child abuse, in 2008 of battery on a cohabitant, and in 2009 of possession of a controlled substance.

Additionally, he served a prison term on his assault conviction, violated his parole for that offense once, and committed his most recent offenses while on probation for possession of cocaine base. Further, his assault and child endangerment offenses involved Fields chasing and ramming his car into one driven by his ex-girlfriend with her male friend and two children ages one and three inside as both cars traveled at a high rate of speed. The chase ended when Fields clipped the rear of his ex-girlfriend's car while traveling approximately 85 miles an hour causing her car to spin two times and flip three times.[4] The court could reasonably conclude from Fields's prior record, which appeared to be escalating in violence, and the circumstances of his brutal attack on victim Doe that left her blind in one eye, that Fields should not be deemed to be outside the spirit of the three strikes law.

Moreover, there is no merit to Fields's contention that he was suffering from drug psychosis syndrome and that the court failed to give full weight to this factor. In ruling on Fields's *Romero* motion, the court considered numerous reports of psychological evaluations that were performed on Fields. The court's conclusion that Fields was malingering his mental symptoms was supported by several of these reports and by Fields's admission at his sentencing hearing that he did not have any "substantial mental health problem." Additionally, Fields did not claim he was suffering from any type of psychosis or other mental illness when he committed any of his offenses that involved violence. Accordingly, we conclude the court did not abuse its discretion when it denied Fields's *Romero* motion.

---

[4] Miraculously, none of the occupants of his ex-girlfriend's car suffered serious injuries.

13

Further, since Fields's strike conviction made him ineligible for probation, it follows that the court did not abuse its discretion by its failure to grant him probation in case No. F11903982 or to reinstate Fields's probation in case No. F09905868.

*Fields was not Denied the Effective Assistance of Counsel*

Fields contends the violent and irrational conduct underlying his most recent offenses demonstrated an inability to control his behavior. He further contends that, together with the numerous psychological evaluations, they conclusively establish that he suffered from drug psychosis syndrome and that this syndrome was a material causative factor in his offenses. Thus, according to Fields, defense counsel provided ineffective representation by his failure to investigate and present evidence that Fields suffered from this syndrome because it deprived him of "a potentially meritorious defense" at sentencing. Fields is wrong.

To prevail on a claim of ineffective assistance of counsel petitioner "must establish his counsel's representation fell below an objective standard of reasonableness and there is a reasonable probability that, but for counsel's deficient performance, the result of the trial would have been different." (*People v. Mesa* (2006) 144 Cal.App.4th 1000, 1007.)

Although Drs. Terrell and Seymour concluded that Fields suffered from some type of psychosis, both concluded that he suffered from a psychosis NOS and Dr. Seymour specifically ruled out substance abuse induced psychosis. Further, neither of these doctors performed any tests to determine whether Fields was malingering and in their reports neither doctor addressed the absence of a history of psychiatric treatment or hospitalizations from Fields's medical history or Fields's exhibition of symptoms that were not typical of psychotic patients.

In contrast, Drs. Willis, Pointkowski and Taylor, and Fields's treatment team at Atascadero State Hospital all concluded that Fields was feigning experiencing psychotic

14

symptoms. Further, this conclusion is supported by, among other things, Fields's scores on several tests (the SIMS, SIRS and ILK) that indicated malingering, the absence from JPS records of any evidence that Fields had exhibited psychotic symptoms, the absence of a lengthy history of psychiatric treatments and hospitalizations in Fields's medical records, and Fields's ability to function and get his needs met at Atascadero State Hospital.

Additionally, that Fields's most recent offenses were violent, irrational, and impulsive did not necessarily indicate that they resulted from some type of psychosis. Nor did Fields himself or any of the doctors who examined him attribute Fields's commission of any of his offenses to Fields suffering from a drug induced psychosis. Moreover, in complaining to the court at his sentencing hearing that the court did not adequately take into account his history of drug abuse, Fields admitted he did not have any mental health issues. Thus, we conclude that defense counsel's representation of Fields was not deficient as he alleges because there does not appear to have been any evidence of drug psychosis syndrome to present and, in any case, there was no evidence that a psychosis was involved in Fields's commission of any of his offenses. For these reasons, we also conclude that any failure to develop the evidence of this syndrome did not prejudice Fields.

### Fields's Sentence in Case No. F11903982 Violates Section 654

Section 654, subdivision (a) provides:

> "An act or omission that is punishable in different ways by different provisions of law *shall be punished under the provision that provides for the longest potential term of imprisonment*, but in no case shall the act or omission be punished under more than one provision. An acquittal or conviction and sentence under any one bars a prosecution for the same act or omission under any other." (Italics added.)

By staying the terms imposed in counts 2 through 5, the court implicitly found that count 1 provided for the longest term. However, the aggregate 18-year term imposed in

15

that count included a five-year serious felony enhancement. Serious felony enhancements are enhancements for prior convictions, i.e., status enhancements. Status enhancements do not attach to a particular count and are added only once as the final step in calculating a determinate sentence. (*People v. Tassell* (1984) 36 Cal.3d 77, 90.)

Since Fields's five-year serious felony enhancement did not attach to count 1, the court imposed an aggregate term of only 13 years on Fields's domestic violence conviction and great bodily injury enhancement in that count. Moreover, since the court imposed a 16-year term on Fields's mayhem conviction in count 2, and this provided the longest term of imprisonment, the court erred by its failure to use this term as the principal term and to stay the 13-year aggregate term it should have imposed in count 1.

### *The Term Imposed in Case No. F09905868*

Prior to hearing argument regarding sentencing, the court advised the parties of its tentative sentencing decision, which included imposing a consecutive one-year term for Fields's possession conviction in case No. F09905868. When the court actually imposed sentence on that case, however, it merely stated that it was lifting the stay in that case and ordering "that term" to run consecutive to the term it imposed in case No. F11903982. It appears from the foregoing the court intended to impose a consecutive one-year term on Fields's possession conviction in case No. F09905868. This was error.

When a court suspends execution of sentence, places a defendant on probation, and subsequently lifts the stay after the defendant violates probation, the court must impose the previously suspended sentence. (*People v. Howard* (1997) 16 Cal.4th 1081, 1088.) However, since the court ran the term it imposed in case No. F09905868 consecutive to the term it imposed in case No. F11903982, by operation of law it was required to impose only one-third the middle term for Fields's possession of cocaine base

16

conviction, i.e., a term of eight months (§ 1170.1, Health & Saf. Code, § 11350, subd. (a)).[5]

### Fields's Misdemeanor Vandalism Conviction in Case No. F11903982

The court inadvertently did not pronounce sentence on Fields's vandalism conviction in count 6 of case No. F11903982. "The failure to pronounce sentence on a count is an unauthorized sentence and subject to correction on remand." (*People v. Price* (1986) 184 Cal.App.3d 1405, 1411, fn. 6.) Thus, the court erred by its failure to pronounce sentence on that count.

### Presentence Custody Credit

A review of the record disclosed the court committed several errors in its award of presentence custody credit. The record indicates that in case No. F11903982, Fields was in local custody a total of 261 days during the following time periods: 3 days from July 3, 2011, through July 5, 2011, 120 days from April 15, 2012, through August 12, 2012, and 138 days from September 14, 2012, through January 29, 2013 (3 days + 120 days + 138 days = 261 days). He was also in custody 32 days while being treated at Atascadero State Hospital from August 13, 2012, through September 13, 2012.

---

[5]     The prior prison term enhancement in case No. F09905868 and the serious felony enhancement in case No. F11903982 were each based on Fields's September 26, 2005, conviction for assault with a deadly weapon. The same conviction cannot serve as a basis for imposing a prior prison term enhancement and a serious felony enhancement. (*People v. Jones* (1993) 5 Cal.4th 1142, 1152.) Therefore, even though the court lifted the stay on the sentence previously imposed in case No. F09905868, it was not required to impose the prior prison term enhancement that was part of that sentence because it would have been an unauthorized sentence.

Additionally, if the court had imposed an unstayed term on count 2 and stayed the terms it imposed on counts 1, 3, 4 and 5, it should have imposed an aggregate term of 21 years 8 months in both cases, the aggravated term of 16 years on Fields's mayhem conviction in count 2, a consecutive eight-month term in case No. F09905868, and a five-year serious felony enhancement.

17

In addition to the days noted above, in case No. F09905868, Fields was in custody 74 days from October 12, 2009, through December 24, 2009.

In case No. F11903982, the court awarded Fields 212 days of presentence actual custody credit, 106 days of presentence conduct credit, and 32 days of treatment credit for the days he was confined at Atascadero State Hospital for a total of 350 days of presentence custody credit (212 days + 106 days + 32 days = 350 days). In case No. F09905868, the court awarded him 332 days of presentence custody credit consisting of 261 days of presentence actual custody credit, 39 days of presentence conduct credit, and 32 days of treatment credit (261 days + 39 days + 32 days = 332 days).

Aside from any other errors in calculating Fields's award of presentence custody credit in each case, it is clear from the record the court intended to award him 332 days of presentence custody credit in case No. F11903982 and 350 days of such credit in case No. F09905868 and that it erred by inadvertently reversing the awards.

Further, since Fields was sentenced to a consecutive sentence in case No. F09905868, *he was not entitled to duplicative credit in that case for the days he spent in custody on both cases*. (§ 2900.5, subd. (a).) Thus, the court also erred when it awarded Fields duplicative presentence custody credit for the days he spent in presentence custody in both cases against the term it imposed in case No. F09905868.

Additionally, the record indicates Fields was arrested on July 3, 2011, in case No. F11903982, bailed out on July 5, 2011, was back in custody on August 10, 2011, and that he remained in custody through the date of his sentencing on January 29, 2013. However, the court did not give Fields presentence custody credit in case No. F11903982 for the 249 days Fields was in custody from August 10, 2011, through April 14, 2012, and the probation report does not explain the reason for this omission. Thus, it appears the court may have erred by failing to award Fields presentence custody credit for these 249 days.

Moreover, a defendant convicted of a violent felony can earn only 15 percent presentence conduct credit for the time he spends in presentence custody. (§ 2933.1, subd. (c).) This limitation applies to presentence custody a defendant served for any nonviolent felony the defendant is sentenced for at the same time that he is sentenced for a violent felony or felonies. It also applies to presentence custody the defendant served on his nonviolent felony offense prior to committing the violent offenses for which he is sentenced. (*People v. Baker* (2002) 144 Cal.App.4th 1320, 1329.)

Applying these principles to the instant case, and without considering whether Fields is entitled to presentence custody credit for the omitted period discussed above, in case No. F11903982, Fields was entitled to 261 days of presentence actual custody credit, 39 days of presentence conduct credit (261 days x 15 percent = 39.15 days), and 32 days of custody while receiving treatment at Atascadero State Hospital, for a total of 332 days of presentence custody credit (261 days + 39 days + 32 days = 332 days). In case No. F09905868, Fields was entitled to 74 days of presentence actual custody credit and 11 days of presentence conduct credit (74 days x 15 percent = 11.1 days), for a total of 85 days of presentence custody credit (74 days + 11 days = 85 days).

In light of the numerous errors discussed above and the possibility that Fields may be entitled to additional presentence custody credit, we will remand the matter to the trial court for further proceedings.

### *The Minute Orders of Fields's Sentencing Hearing and Abstract of Judgment*

Our review of the record disclosed that the minute orders of Fields's sentencing hearing contains several errors including that it fails to memorialize the actual stayed, upper term the court imposed in counts 4 and 5 of case No. F11903982 and it erroneously indicates the court imposed an aggregate concurrent term of four years in case No. F09905868.

Fields's abstract of judgment also contains several errors including the following: (1) it does not memorialize the stayed, upper terms imposed on counts 2 and 3; (2) it does not memorialize his convictions on counts 4 and 5 or the terms imposed on those counts; (3) it erroneously lists the prior prison term enhancement the court struck in case No. F11903982, and (4) it erroneously indicates the court imposed a concurrent three-year term on Fields's possession of cocaine base conviction in case No. F09905868.

## DISPOSITION

The matter is remanded to the trial court so that it may, consistent with the views expressed herein, sentence Fields to a term that complies with section 654 and recalculate Fields's entitlement to presentence custody credit.  Once the trial court resentences Fields, it is directed to issue a minute order and an amended abstract of judgment that accurately incorporate the judgment.  The trial court is further directed to forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

20