Filed 2/28/22

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>JERRY ANTHONY FAIAL,<br><br>        Defendant and Appellant. | A159026<br><br>(San Mateo County Super. Ct. No. SC083808) |

Defendant Jerry Anthony Faial appeals after the trial court revoked his probation and ordered execution of his previously imposed but suspended sentence.  Defendant argues: (1) due to the passage of Assembly Bill No. 1950 (2019–2020 Reg. Sess.) (Assembly Bill 1950), his probation retroactively terminated before it was revoked and he is entitled to discharge from confinement; (2) his prior prison term enhancements under Penal Code section 667.5, subdivision (b) are invalid because they were not based on sexually violent offenses; and (3) he is entitled to additional credits.[1]

---

[*]     Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts B and C of the Discussion.

[1]     All further statutory references are to the Penal Code unless otherwise provided.

1

In the published portion of this opinion, we conclude the passage of Assembly Bill 1950 did not invalidate the trial court's orders revoking and terminating defendant's probation and executing the previously imposed 12-year sentence. In the unpublished portion of this opinion, we agree that defendant's section 667.5, subdivision (b) enhancements must be stricken and that he is entitled to additional credits, so we will remand to the trial court for resentencing.

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2015, the People charged defendant by information with first degree burglary (§ 460, subd. (a), count 1), petty theft with a prior theft-related conviction (§ 666, subd. (a), count 4), and two counts of criminal threats (§ 422, counts 5 and 6). The burglary charge stemmed from his entering his father's home in violation of a stay away order and taking tools. The remaining counts involved his stealing from a department store and threatening loss prevention officers.

As to the burglary count, the People alleged that defendant was released on bail or on his own recognizance at the time of the offense (§ 12022.1). The People also alleged defendant suffered two prior strike offenses (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), two prior serious felony convictions (§ 667, subd. (a)(1)), and two prior prison terms (§ 667.5, subd. (b)). Defendant was convicted of all four counts, and all special and enhancement allegations were either found true or admitted.

Prior to sentencing, San Mateo County Superior Court Judge Donald Ayoob granted defendant's motion to strike both of his strike priors. The court indicated it was doing so in the interests of justice, in part because the specific circumstances of the presently charged offenses rendered them less serious. On May 4, 2017, the court imposed a total sentence of 12 years on

2

defendant, consisting of the low term of two years for the first degree burglary count, plus two consecutive five-year terms for the section 667, subdivision (a)(1) priors, and concurrent terms for the petty theft with a prior count and the criminal threats counts. Defendant waived all credits. The court suspended execution of the sentence and placed defendant on four years of probation. Among the terms of defendant's probation was that in lieu of one year in jail, he was to complete a particular residential treatment program from which he could not leave until approved to do so by the program director and his probation officer.

In November 2017, defendant admitted violating the terms of his probation by not completing the program. Five weeks after it revoked defendant's probation, the trial court reinstated it and ordered defendant to complete a different program. The court indicated defendant would not receive credit for the time he spent in his first program, but would earn credit from the day he surrendered himself to the day of the probation violation hearing

On May 14, 2019, defendant's probation officer filed an affidavit indicating defendant had again violated the terms of his probation, this time by failing to abstain from use and possession of alcohol on different occasions, resisting arrest, possessing a knife, and possessing drug paraphernalia. The two alleged violations for failure to abstain from alcohol use and possession occurred on January 14, 2019 and around late March 2019. The remaining alleged violations occurred on May 9, 2019. A minute order dated May 15, 2019 indicates probation was revoked as of that date. In July 2019, the probation officer filed an amended affidavit with the same allegations, and added a seventh alleged violation for a urine analysis with positive results for alcohol confirmed on May 23, 2019.

On November 7, 2019, San Mateo Superior Court Judge Robert Foiles held a revocation hearing, found all but the seventh of the alleged probation violations true, and ordered execution of the previously imposed but suspended 12-year sentence. Judge Foiles indicated the sentence was structured as follows: an aggravated six-year term for the first degree burglary count; a two-year consecutive term for the on-bail enhancement; eight-month consecutive terms for each of the remaining counts; two years total for the two section 667.5, subdivision (b), enhancements; and striking of the section 667, subdivision (a), enhancements in the interests of justice. The court awarded defendant a total of 547 days of custody credit. Defendant appealed.

## DISCUSSION

### A. Assembly Bill No. 1950

As indicated, on May 4, 2017 the trial court imposed a sentence of 12 years but suspended its execution and placed defendant on four years of probation. A little over two years later, on May 15, 2019, the trial court summarily revoked defendant's probation based on two alleged probation violations occurring in January and March of 2019 and four alleged violations occurring on May 9, 2019. In November 2019, the court found the six alleged violations true, terminated defendant's probation, and ordered execution of his 12-year sentence.

On appeal, defendant does not challenge the sufficiency of the evidence supporting the six probation violations. Instead, he argues that Assembly Bill 1950—which limits probation terms to two years for most felonies— applies to his case and divested the trial court of jurisdiction to revoke and terminate his probation after he had been on probation for two years. Put another way, he contends that Assembly Bill 1950 applies retroactively to

4

shorten his probation term from four years to two years, thereby retroactively depriving the trial court of jurisdiction to revoke his probation after passage of the two-year mark and rendering the revocation and termination of his probation invalid.  We cannot agree.

Effective January 1, 2021, Assembly Bill 1950 amended section 1203.1 to shorten the period of probation for most misdemeanors and felonies.  For purposes of this case, section 1203.1, subdivision (a), states in relevant part: "The court, or judge thereof, in the order granting probation, may suspend the imposing or the execution of the sentence and may direct that the suspension may continue for a period of time not exceeding two years, and upon those terms and conditions as it shall determine."  (§ 1203.1, subd. (a).)  As explained in the Legislative Counsel's Digest, whereas previous law had authorized courts to grant a period of probation "not exceeding the maximum term for which the person could be imprisoned," Assembly Bill 1950 instead "authorize[s] a court to impose a term of probation not longer than 2 years, except as [otherwise] specified."  (Legis. Counsel's Dig., Assem. Bill No. 1950 (2019—2020 Reg. Sess.) Stats. 2020, ch. 328; see *People v. Sims* (2021) 59 Cal.App.5th 943, 947.)  This change in the law bars the imposition of more than two years of probation for a felony offense unless the offense is a violent felony listed in section 667.5, subdivision (c), or is subject to a specific probation length, or is specifically excluded from the statute's two-year limit.  (§ 1203.1, former subds. (a), (m), added by Stats. 2020, ch. 328, § 2, now subds. (a), (l).)[2]

---

[2]    Assembly Bill 1950's provisions were retained in full when section 1203.1 was later repealed and added again as section 1203.1.  (Stats. 2021, ch. 257, §§ 21–22 (Assem. Bill No. 177).)  As relevant here, however, former section 1203.1, subdivision (m), was redesignated as section 1203.1,

5

Appellate courts are so far unanimous in holding that Assembly Bill 1950 applies retroactively to defendants who were serving a term of probation when the legislation became effective on January 1, 2021; in such cases, the courts have acted to reduce the length of their probation terms. (E.g., *People v. Greeley* (2021) 70 Cal.App.5th 609, 627; *People v. Czirban* (2021) 67 Cal.App.5th 1073, 1095; *People v. Schultz* (2021) 66 Cal.App.5th 887, 894–895; *People v. Lord* (2021) 64 Cal.App.5th 241, 244–246; *People v. Stewart* (2021) 62 Cal.App.5th 1065, 1071–1074, review granted June 30, 2021, S268787; *People v. Sims*, *supra*, 59 Cal.App.5th at p. 964; *People v. Quinn* (2021) 59 Cal.App.5th 874, 881–885.) While we have no quarrel with those decisions, we are not persuaded that Assembly Bill 1950 invalidates a trial court's revocation and termination of a defendant's probation where, as here, such actions were properly taken before Assembly Bill 1950's effective date.

In assessing whether Assembly Bill 1950's amendment of section 1203.1 was intended to have the application urged by defendant, we observe the statute addresses essentially three matters: a trial court's authority to *grant* probation for a term not exceeding two years except as otherwise specified (e.g., § 1203.1, subds. (a)); the permissible terms and conditions of probation that should be considered (e.g., *id.*, subds. (a)–(e), (g), (i)); and specific details for the implementation or modification of certain conditions (e.g., *id.*, subds. (h), (j), (k)). The amended statute, however, includes no terms purporting to modify a trial court's authority to revoke and terminate probation due to a defendant's violation of probation terms or conditions. Nor

---

subdivision (l). Henceforth, this opinion will cite to the current version of the statute.

did Assembly Bill 1950 undertake to amend section 1203.2 or section 1203.3—the statutes that confer and address such authority.

As the legislative history reflects, the drafters of Assembly Bill 1950 acted on studies showing that probation services are "most effective during the first 18 months of supervision" and that "providing increased supervision and services earlier reduces an individual's likelihood to recidivate." (Assem. Floor Analysis, 3d reading analysis of Assem. Bill. No. 1950 (2019–2020 Reg. Sess.) as amended June 10, 2020, p. 1 (Assem. 3d Reading).) The various legislative analyses highlighted the cost savings of reducing probation periods and noted the bill would allow for "the reinvestment of funding into supportive services for people on misdemeanor and felony probation rather than keeping this population on supervision for extended periods." (Assem. 3d Reading, at p. 1; Assem. Com. on Appropriations, Analysis of Assem. Bill. No. 1950 (2019–2020 Reg. Sess.) as amended May 21, 2020, p. 1 (Assem. Appropriations Analysis); see Sen. Com. on Public Safety, Analysis of Assem. Bill. No. 1950 (2019–2020 Reg. Sess.) as amended June 10, 2020, p. 4 (Sen. Public Safety Analysis).) The analyses also referenced comments from supporters of the bill that shortening probation periods would not only " 'decrease the amount of time that an individual must suffer for a prior misdeed,' " but also " 'has the added benefit of incentivizing compliance.' " (Assem. 3d Reading, at p. 2; Assem. Appropriations Analysis, at p. 2.) Finally, other analyses that focused on public safety noted Assembly Bill 1950 "supports probation officers in completing the duties of their job more effectively, by making their caseloads more manageable." (Sen. Public Safety Analysis, at p. 4; see Assem. Com. on Public Safety, Analysis of Assem. Bill. No. 1950 (2019–2020 Reg. Sess.) as amended May 6, 2020, p. 4.)

7

Consistent with the statutory terms and legislative history, the appellate courts have unanimously held that Assembly Bill 1950's mandate for shorter probation periods should extend to defendants who were on probation when the legislation became effective on January 1, 2021. (See cases cited, *ante*, at p. 6.) Indeed, these and future probationers alike would benefit from the law's reduced probation periods and the resulting incentivization of compliance toward rehabilitation, as well as from the drafters' anticipation that cost savings would allow more effective supervision and increased availability of supportive services to reduce possible recidivism. But these legislative aims are not advanced by extending the law to former probationers who were serving executed sentences as of the law's effective date, and nothing in the statutory language indicates such defendants were intended to benefit from this change in the law. Had the Legislature intended to overturn pre-2021 revocation and termination orders that were based on violations committed while defendants were validly on probation, with the effect of upending their properly executed sentences, we may assume the Legislature could have demonstrated that intent through statutory language and would have at least mentioned the matter in the various legislative analyses of the bill. It did not. (Cf. *People v. Buycks* (2018) 5 Cal.5th 857, 878–884, 889–890 [Proposition 47, which explicitly reclassified certain felonies to misdemeanors and mandated that reduced convictions be misdemeanors "for all purposes," construed as also providing retroactive relief against felony-based enhancements where the underlying felony was reduced to a misdemeanor under the measure].)

Here, there is no dispute that in May 2019, under the law as it then existed, defendant was validly on probation and the trial court was duly authorized to summarily revoke that probation based on defendant's alleged

8

probation violations. (§§ 1203.2, subd. (a), 1203.3, subd. (a).) Likewise, there is no dispute that when Assembly Bill 1950 went into effect, defendant's probation had already been properly terminated based on those violations and he was in prison serving his executed 12-year sentence. Under these circumstances, invocation of Assembly Bill 1950 is unavailing.

In arguing that Assembly Bill 1950 should apply retroactively to former probationers such as himself, defendant relies principally on *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299 (*Lara*) and *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*). In *Lara*, the Supreme Court held that a new law's requirement of a transfer hearing before a juvenile could be tried as an adult applies retroactively to all juveniles who had been charged directly in adult court and whose cases were not yet final. (*Lara*, at pp. 303–304, 308–309.) In *Frahs*, the court concluded that a new law creating a pretrial diversion program for certain defendants with mental disorders applies retroactively to defendants whose judgments of conviction are pending on appeal. (*Frahs*, at pp. 624–625.) Those authorities do not support defendant's position.

The laws at issue in *Lara* and *Frahs* require that certain classes of persons be afforded the opportunity to show that their crimes and circumstances warranted rehabilitative or treatment-focused dispositions rather than prosecution and sentencing in the criminal courts. (See *Lara, supra*, 4 Cal.5th at pp. 303, 309 [emphasizing juvenile court's goal of rehabilitation]; *Frahs, supra*, 9 Cal.5th at pp. 629, 631 [allowing for potential dismissal of charges for defendants with qualifying mental health disorders upon satisfactory participation in mental health diversion program].) In those cases, the Supreme Court determined that the respective offenders should benefit from retroactive application of the ameliorative effects of the respective laws. (*Lara*, at p. 309; *Frahs*, at pp. 630–632.) Notably, the laws

9

in *Lara* and *Frahs* did not contemplate obliteration of the offenders' accountability for conduct predating the new laws; rather, the offenders remained answerable for such conduct through the juvenile justice system or through the mental health diversion program, provided their circumstances were suitable for those alternatives to criminal court.

In this case, we reiterate our agreement with the decisions holding that Assembly Bill 1950 applies retroactively to a specific class of persons—i.e., defendants whose probation has not been revoked and terminated. For such persons, Assembly Bill 1950 acts in mitigation by shortening their probation terms regardless of when those terms were established. But nothing in *Lara* or *Frahs* supports defendant's interpretation of Assembly Bill 1950 as benefiting persons who are no longer on probation but are serving their executed sentences. There is no indication that Assembly Bill 1950 was intended to extinguish a defendant's accountability for probation violations, or to otherwise invalidate revocation and termination orders predating January 1, 2021. Moreover, we note that probation violations sometimes involve criminal conduct, and that Assembly Bill 1950 evinced no intent to excuse conduct that was addressed as a violation of probation rather than prosecuted as a new criminal charge. Finally, and ultimately, Assembly Bill 1950's basic aims to incentivize compliance and allow for increased supervision and services for offenders working toward rehabilitation are inconsequential for former probationers like defendant. Accordingly, we are not persuaded that *Lara* and *Frahs* support the overly broad retroactive effect that defendant urges.

Defendant additionally relies on *People v. Sims*, *supra*, 59 Cal.App.5th 943, for the proposition that Assembly Bill 1950 applies retroactively to non-final cases. But significantly, the defendant in *Sims* was on active probation

10

at the time of his appeal. There was no evidence of a probation violation, and the trial court had neither revoked nor terminated his probation by the time Assembly Bill 1950 became effective. (*Sims*, at pp. 947, 949.) Thus, the factual context of *Sims* clearly lends no support to defendant's claim that Assembly Bill 1950 applies retroactively to invalidate the revocation and termination of his probation and the resulting execution of his sentence.

In sum, we conclude the passage of Assembly Bill 1950 did not invalidate the trial court's orders revoking and terminating defendant's probation and executing the previously imposed 12-year sentence.[3]

## B. Prior Prison Term Enhancements

Next, defendant argues the enhancements imposed on him under section 667.5, subdivision (b) (section 667.5(b)) must be stricken given statutory amendments made by Senate Bill No. 136 (2019–2020 Reg. Sess.).

When defendant was sentenced, former section 667.5(b) generally provided for a one-year enhancement for each prior prison term (or jail term imposed under section 1170, subdivision (h)) that a defendant served in the preceding five years. But effective January 1, 2020, section 667.5(b) was modified to permit that enhancement only when the prior prison term is for a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b). (Stats. 2019, ch. 590, § 1.) The People agree that defendant is entitled to the benefit of the change in the law. We agree insofar as the trial court's order for execution of the sentence indicated that defendant's sentence included terms for two section 667.5(b) priors, and the

---

[3] Having reached this conclusion, we need not and do not address the People's arguments that defendant is not entitled to the benefit of the law as amended by Assembly Bill 1950 because defendant's burglary conviction qualifies as a violent felony, or that probation was actually terminated during defendant's second year of probation.

11

record reflects the underlying prior convictions were not for any sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b). As charged in the information, the section 667.5(b) enhancements were based on violations of section 460, subdivision (a), and section 136.1, subdivision (c)(1).

We now address defendant's invitation to simply strike the enhancements rather than remand the matter to the trial court for resentencing.

When part of a sentence is stricken on appeal, a remand for " 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' " (*People v. Buycks*, *supra*, 5 Cal.5th at p. 893.) If, however, the trial court "imposed the maximum possible sentence, [then] regardless of whether [an] enhancement was stricken, there is no need to remand the matter to the trial court to exercise its sentencing discretion anew." (*Id.* at p. 896, fn. 15.)

Here, defendant contends a remand is unnecessary because the trial court imposed the maximum possible sentence. But as the People point out, "the imposition of the upper term on the burglary count did not preclude imposition of one of the five-year serious felony prior enhancements and adjustments in the terms on the burglary or the other counts (counts 4, 5, and 6, the petty theft with a prior and criminal threats counts) to replace the no longer applicable one-year enhancements." We agree. The record reflects that the trial court struck the section 667, subdivision (a) enhancements in an exercise of discretion to achieve justice given the circumstances before it. But the court could have structured the sentence in a different way to reach a sentence of 12 years, regardless of the section 667.5(b) enhancements. Indeed, as discussed, Judge Ayoob originally imposed the 12-year sentence in

12

2017 by utilizing the low term on the burglary count plus the section 667, subdivision (a) enhancements, without ever imposing the section 667.5(b) enhancements. But Judge Foiles, who ordered execution of the sentence after revoking probation, structured the sentence differently by utilizing the section 667.5(b) enhancements for the 12-year term.

Defendant counters that the sentence as structured by the "executing" judge was a "contractual" sentence that cannot be changed, aside from striking the section 667.5(b) enhancements. This is unpersuasive. Judge Foiles indicated the 12-year sentence he was executing was simply the one imposed by Judge Ayoob, which is consistent with established law. (§ 1203.2, subd. (c) ["Upon any revocation and termination of probation the court may . . . , if the judgment has been pronounced and the execution thereof has been suspended, . . . revoke the suspension and order that the judgment shall be in full force and effect."]; *People v. Howard* (1997) 16 Cal.4th 1081, 1088 ["On revocation of probation, if the court previously had imposed sentence, the sentencing judge must order that exact sentence into effect"].) Why Judge Foiles set out a structure for executing the sentence in 2019 that differed from the one Judge Ayoob utilized for imposing the sentence in 2017 is unexplained by the parties or anything in the record. Ultimately, however, these circumstances do not support defendant's position that the structure of the 12-year sentence, as set out by Judge Foiles, was "contractual." The circumstances here only strengthen the conclusion that a remand for resentencing is appropriate.

## C. Credits

Defendant contends the trial court failed to award him 87 additional days of custody credit in addition to the 547 days awarded. More specifically, he claims he is entitled to an additional 56 days of credit for time spent in

13

custody during his late-2017 revocation proceedings, as well as a total of 213 days of credit for the time he spent in his program from November 22, 2017 to June 23, 2018.

The People agree that the trial court indicated it would award defendant credit to cover the date he surrendered himself in connection with his 2017 revocation proceedings to the date of his revocation hearing. The People also acknowledge that November 22, 2017 to June 23, 2018 amounts to 213 days, not 183 days. Because we are remanding this matter for resentencing, we will instruct the court to also recalculate defendant's credits.[4]

## DISPOSITION

The matter is remanded for resentencing. The trial court is instructed to vacate the enhancements imposed under section 667.5(b) and to recalculate defendant's credits. In all other respects, the judgment is affirmed.

---

[4] The reporter's transcript of the revocation hearing on November 21, 2017, indicates defendant was taken into custody in connection with his 2017 revocation proceedings on October 24, 2017, but a minute order in the clerk's transcript seems to indicate he was taken into custody on October 16, 2017. In any event, we need not resolve that discrepancy here. We leave it to the trial court to determine the correct number of credits to be awarded on remand.

14

_____
Fujisaki, J.

WE CONCUR:


_____
Tucher, P. J.


_____
Petrou, J.




A159026

People v. Faial (A159026)

Trial Court:          San Mateo County Superior Court

Trial Judge:          Hon. Robert Foiles

Attorneys:

Allan Charles Dell'Ario under appointment by the First District Appellate Project's Independent Case System on behalf of Defendant and Appellant.

Rob Bonta, Attorney General, Lancee Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Senior Assistant Attorney General, Alice B. Lustre, Supervising Deputy Attorney General Catherine A. Rivlin, Supervising Deputy Attorney General on behalf of Plaintiff and Respondent.